DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jasmine J. Hunt, appeals from his convictions in the Summit County Court of Common Pleas for intimidation of a crime victim or witness and aggravated menacing. We affirm.
 I. {¶ 2} On August 1, 2002, the Summit County Grand Jury indicted Mr. Hunt on three separate counts: (1) intimidation of a crime victim or witness, in violation of R.C. 2921.04(B); (2) aggravated menacing, in violation of R.C. 2903.21; and (3) assault, in violation of R.C.2903.13(A). A jury trial followed. The jury found Mr. Hunt guilty of intimidation of a crime victim or witness and aggravated menacing. However, the jury could not reach a verdict as to the assault charge; consequently, this charge was dismissed. The trial court sentenced Mr. Hunt accordingly. Mr. Hunt failed to timely file his notice of appeal; nevertheless, he moved for leave to file a delayed appeal. This court granted his motion. On appeal, Mr. Hunt raises four assignments of error for review. As assignments of error one and two involve similar issues of law and fact, we will address them together.
 II. A. First Assignment of Error
"The trial court erred in denying [Mr. Hunt's] oral motion for directed verdict pursuant to [Crim.R.] 29 because the [State] presented insufficient evidence in order to meet each and every element of the offenses of intimidation of a crime victim or witness and aggravated menacing."
 Second Assignment of Error
"The jury erred in finding [Mr. Hunt] guilty of intimidation of [a] crime victim or witness pursuant to R.C. 2921.04(B) and aggravated menacing pursuant to R.C. 2903.21 because said findings of guilt were against the manifest weight of the evidence."
 {¶ 3} In his first and second assignments of error, Mr. Hunt challenges the adequacy of the evidence produced at trial. Specifically, Mr. Hunt avers that his convictions for intimidation of a crime victim or witness and aggravated menacing were based on insufficient evidence and were against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case. Mr. Hunt's first and second assignments of error lack merit.
 {¶ 4} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 5} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 6} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 7} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 8} Mr. Hunt was found guilty of intimidation of a crime victim or witness, in violation of R.C. 2921.04(B). This provision provides, in relevant part, "[n]o person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges[.]" R.C. 2921.04(B). He was also found guilty of aggravating menacing, in violation of R.C. 2903.21. R.C. 2903.21 states, "[n]o person shall knowingly cause another to believe that the offender will cause serious physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family."
 {¶ 9} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). When determining whether an appellant acted "knowingly," his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. State v. Dorsey (Feb. 13, 1991), 9th Dist. No. 90CA004796.
 {¶ 10} At trial, Joseph Easton ("Easton"), the victim, testified that he owns a business called LJ Audio. He further testified that he contracted with Mr. Hunt to do work on Mr. Hunt's automobile. Easton explained that there came a point in time where he and Mr. Hunt were not having "polite conversation[s.]" Easton then stated that on July 9, 2002, at approximately 11:30 p.m., Mr. Hunt and two other individuals entered his shop. He testified that Mr. Hunt punched and smacked him, rammed his head into a concrete wall, threatened him with a Hennessy beer bottle, and attempted to throw him into the trunk of a car. Easton asserted that after Mr. Hunt and the two individuals left his shop, he flagged down a police officer and made a report. Easton stated that after he exited the police officer's cruiser and entered his car, he believed that he was being followed as he drove home. He explained that he was scared because Mr. Hunt told him that he and his family would be killed if he spoke with the police.
 {¶ 11} Sergeant Brian Simcox testified that Easton flagged him down on July 9, 2002. He further testified that Easton told him that he had been assaulted. Sergeant Simcox noted that Easton appeared disheveled, had blood on his T-shirt and in his mouth, had swelling around his eye, and had a fat lip. Sergeant Simcox asserted that Easton seemed "very nervous" and "genuinely scared." He stated that Easton was hesitant to get in his cruiser; however, Easton eventually got in the cruiser. Sergeant Simcox explained that he moved his cruiser to a secluded area and turned off the overhead lights inside the cruiser upon Easton's request. Sergeant Simcox testified that Easton made these requests because "[Mr. Hunt] said if [Easton] call[ed] the police he was going to kill [Easton]. * * * And [Mr. Hunt] also told [Easton] that if he got arrested over this incident, somebody else would come in and do it for him." He also testified that Easton stated, "[y]ou don't understand. [Mr. Hunt] is going to kill me if he sees me with you. I am afraid of [Mr. Hunt]." Sergeant Simcox stated that he asked Easton to return to his shop to retrieve Mr. Hunt's license plate number, but Easton refused and remarked, "`I'm not getting out of [your cruiser] to got back to my shop. If they see me getting out * * *, they'll know I called the police.'"
 {¶ 12} Sergeant Simcox admitted that Easton had made a few comments that made him uneasy. He further admitted that he believed Easton "wanted the documentation because [Easton] knew something else was going to happen and the police report would justify [Easton's] actions." Sergeant Simcox also asserted that he learned that Easton had shot Mr. Hunt on July 11, 2002.
 {¶ 13} Tina McCormick ("McCormick") testified that she works at a bar named KP's Place. She further testified that she knows Mr. Hunt, and that she saw him at KP's Place on July 9, 2002. McCormick finally stated that when Mr. Hunt left KP's Place, he was carrying a Hennessy beer bottle.
 {¶ 14} Following the State's witnesses, Mr. Hunt presented his defense. Derrick Davis ("Davis"), a friend of Mr. Hunt, testified that he never witnessed Mr. Hunt threaten or hurt Easton; however, he acknowledged that he does not remember where he was on July 9, 2002. Julius Griffin ("Griffin") testified that he was good friends with Easton and Mr. Hunt. He asserted that Easton approached him and asked him where he could find a gun. Griffin stated that Easton did not comment that he feared for his life or that Mr. Hunt had threatened him.
 {¶ 15} In response to Mr. Hunt's witnesses, the State called a rebuttal witness, Cameisha McKnight ("McKnight"). McKnight testified that she had a conversation with her boyfriend and Mr. Hunt on July 10, 2002. She explained that the conversation centered on Mr. Hunt and "some man
getting into it" about Mr. Hunt's car. McKnight further testified that she learned that Mr. Hunt and this man got into a fight, but noted that Mr. Hunt could not remember exactly what had happened because he was intoxicated at the time of the fight.
 {¶ 16} After a thorough review of the record, we cannot conclude that the trier of fact lost its way and created a manifest miscarriage of justice when it convicted Mr. Hunt of intimidation of a crime victim or witness and aggravated menacing. Consequently, we conclude that Mr. Hunt's assertion that the State did not produce sufficient evidence to support the convictions is also without merit. Accordingly, Mr. Hunt's first and second assignments of error are overruled.
 B. Third Assignment of Error
"The trial court erred in denying [Mr. Hunt's] oral motion for a mistrial because [Mr. Hunt] was materially prejudiced by the irrelevant and extremely prejudicial testimony of Tina McCormick; thereby, resulting in the denial of [Mr. Hunt's] right to a fair trial."
 {¶ 17} In his third assignment of error, Mr. Hunt contends that the trial court abused its discretion when it denied his motion for a mistrial. Specifically, Mr. Hunt contends that his motion should have been granted because the testimony of Tina McCormick was irrelevant and "extremely prejudicial," and, consequently, denied him of his right to a fair trial. We disagree with Mr. Hunt's contention.
 {¶ 18} "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened[.]" State v. Reynolds
(1988), 49 Ohio App.3d 27, 33. A mistrial is only necessary when justice so requires and a fair trial is no longer possible. State v. Franklin
(1991), 62 Ohio St.3d 118, 127.
 {¶ 19} The trial court has the discretion to grant or deny a motion for a mistrial. State v. Sage (1987), 31 Ohio St.3d 173, 182. An appellate court defers to the judgment of the trial court because it is in the best position to determine whether the circumstances warrant the declaration of a mistrial. State v. Glover (1988), 35 Ohio St.3d 18, 19, citing State v. Widner (1981), 68 Ohio St.2d 188, 189. Accordingly, an appellate court will not disturb a trial court's decision granting or denying a motion for a mistrial unless it constitutes an abuse of discretion. State v. Treesh, 90 Ohio St.3d 460, 480, 2001-Ohio-4. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 20} In this case, McCormick testified that Mr. Hunt allegedly hit her with a bar stool, and defense counsel properly entered an objection and moved to strike this testimony. The trial court sustained defense counsel's objection and explained to the jury that the testimony "is stricken from the record, * * * and you will disregard it. This testimony is irrelevant[.]"
 {¶ 21} In Ohio, it is presumed that a jury will follow a trial court's instruction to disregard an answer that has been stricken from the record. See Browning v. State (1929), 120 Ohio St. 62, 72; State v.Dunkins (1983), 10 Ohio App.3d 72, 73. The record does not indicate that the jury disregarded the trial court's instruction; nor has Mr. Hunt demonstrated that the jury disregarded this instruction. Additionally, the record contains sufficient separate evidence to support Mr. Hunt's convictions. Accordingly, we conclude that the trial court did not abuse its discretion when it denied Mr. Hunt's motion for a mistrial based upon the trial court's curative instruction, the lack of evidence demonstrating the jury disregarded the trial court's instruction, and the separate evidence supporting Mr. Hunt's guilt. See State v. Tillman
(1997), 119 Ohio App.3d 449, 461. Therefore, Mr. Hunt's third assignment of error is overruled.
 C. Fourth Assignment of Error
"The trial court erred in admitting the rebuttal testimony presented by the [state] because it was not within the proper scope of rebuttal; the testimony was extremely prejudicial; and, [Mr. Hunt] was given no notice as to [the state's] intent to present the witness or [Mr. Hunt's] self-incriminating statements prior to trial. Furthermore, the trial court further abused its discretion by not permitting defense counsel to present his objections with arguments against the admission of the rebuttal witness on the record."
 {¶ 22} In his fourth assignment of error, Mr. Hunt avers that the trial court erroneously permitted the State to introduce evidence via its rebuttal witness. Mr. Hunt's averment rests on his belief that the State's witness was not a proper rebuttal witness and that he was not notified by the State of its intent to call this witness or its intent to introduce alleged self-incriminating statements made by Mr. Hunt. Additionally, Mr. Hunt avers that the trial court prohibited him from entering an objection regarding the State's rebuttal witness. We disagree.
 {¶ 23} The admission or exclusion of a rebuttal witness rests within the sound discretion of the trial court. State v. Finnerty
(1989), 45 Ohio St.3d 104, 109. As such, an appellate court will not disturb such a determination regarding a rebuttal witness absent an abuse of discretion. See id.; State v. Hicks, 6th Dist. No. L-02-1254,2003-Ohio-4968, at ¶ 11. The purpose of a rebuttal witness is to "explain, refute or disprove new facts introduced into evidence by the adverse party[.]" State v. McNeill (1998), 83 Ohio St.3d 438, 446. The testimony of a rebuttal witness is only relevant to challenge the evidence introduced by the opponent, and the scope of this testimony is limited to such evidence. Id.
 {¶ 24} Upon a thorough review of the record, we conclude that the State's witness was a proper rebuttal witness, as her testimony refuted the evidence introduced by Mr. Hunt. Specifically, the witnesses called by Mr. Hunt testified that they did not see Mr. Hunt threaten or hurt Easton. The State's rebuttal witness testified regarding statements made by Mr. Hunt relating to his altercation with Easton. As this evidence is relevant to refute defense evidence, we conclude that the trial court did not abuse its discretion when it permitted the State to introduce evidence through its rebuttal witness.
 {¶ 25} We now turn to Mr. Hunt's averment that he was not notified by the State of its intent to call the rebuttal witness or its intent to introduce alleged self-incriminating statements made by Mr. Hunt.
 {¶ 26} Crim.R. 16(B) requires the State to disclose certain information to a defendant upon the defendant's request. See Crim.R. 16(A) (providing "[u]pon written request each party shall forthwith provide the discovery herein allowed"). If a defendant makes a proper request for discovery, the State has a duty to disclose this information. Crim.R. 16(B). This information includes the names and addresses of the witnesses it intends to call at trial and any statement made by the defendant. Crim.R. 16(B)(1)(a) and Crim.R. 16(B)(1)(e). Rebuttal witnesses fall within the scope of discovery. State v. Howard
(1978), 56 Ohio St.2d 328, 333; State v. Parson (1983), 6 Ohio St.3d 442,445.
 {¶ 27} Upon a thorough review of the record and the transcript, we cannot find anything that supports Mr. Hunt's assertion that the State failed to name its rebuttal witness or failed to disclose the alleged self-incriminating statements made by Mr. Hunt. When the record and/or transcript fails to support an appellant's alleged error, the alleged error lacks merit. See State v. Anderson (June 16, 1999), 9th Dist. No. 19162. Consequently, we conclude that Mr. Hunt's averment that he was not notified by the State of its intent to call the rebuttal witness or its intent to introduce alleged self-incriminating statements made by Mr. Hunt lacks merit.
 {¶ 28} Finally, addressing Mr. Hunt's averment that the trial court prohibited him from entering an objection to the State's rebuttal witness, we find to the contrary. The record reveals that the trial court did permit Mr. Hunt to object to the State's use of a rebuttal witness. Specifically, during the direct examination of the rebuttal witness, one colloquy between the trial court and defense counsel regarding Mr. Hunt's objections reads:
"[DEFENSE COUNSEL:] Objection.
"* * *
"THE COURT: You may object to the whole line of questioning. Would you please quit interrupting with those objections.
"[DEFENSE COUNSEL:] Very well, Your Honor, I object to the entire line of questioning."
 {¶ 29} Accordingly, we find that the trial court did not prohibit Mr. Hunt from entering an objection regarding the State's rebuttal witness. Consequently, Mr. Hunt's fourth assignment of error is overruled.
 III. {¶ 30} Mr. Hunt's assignments of error are overruled. The convictions in the Summit County Court of Common Pleas are affirmed.
Judgment affirmed.
SLABY, P.J., and WHITMORE, J. CONCUR.