The STATE of Ohio, Appellee,

v.

ROBINSON, Appellant.

[Cite as *State v. Robinson*, 177 Ohio App.3d 560, 2008-Ohio-4160.]

Court of Appeals of Ohio,
Third District, Union County.

No. 14–07–20.

Decided Aug. 18, 2008.

562

Alison Boggs, for appellant.

David Phillips, Union County Prosecuting Attorney, and Melissa A. Chase, Assistant Prosecuting Attorney, for appellee.

---

ROGERS, Judge.

{¶ 1} Defendant-appellant, Raynell Robinson, appeals the judgment of the Union County Court of Common Pleas convicting him of one count of disrupting public services and one count of intimidation of a victim. On appeal, Robinson

argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Based upon the following, we affirm Robinson's intimidation of a victim conviction, reverse his disruption of public services conviction, and remand for further proceedings consistent with this opinion.

{¶ 2} In December 2006, the Union County grand jury indicted Robinson for one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree; one count of disrupting public services in violation of R.C. 2909.04(A)(3), a felony of the fourth degree; and one count of intimidation of a victim in violation of R.C. 2921.04(B), a felony of the third degree.

{¶ 3} Subsequently, Robinson entered a plea of not guilty to all counts in the indictment.

{¶ 4} In February 2007, the state moved to dismiss the felonious assault count due to insufficient evidence, which the trial court granted. The case then proceeded to jury trial on the remaining counts, during which the following testimony was heard.

{¶ 5} Heather Hoge testified that on September 2, 2006, she and Robinson's nephew, Antonio Robinson,[1] attended a party at Robinson's Marysville Meadows apartment; that after they arrived, Robinson asked her to leave; that as she and Antonio departed, Robinson and Antonio began arguing and Robinson hit Antonio; that "[Robinson] hit him again and he like hit the side of the truck. And then they took and got into a scuffle * * *"; that Robinson hit Antonio in the face and "[Antonio's] lip was gashed open and hanging down. And his teeth were like broke [sic] loose from the gums."

{¶ 6} Further, Hoge testified that "after [Robinson] got off of him, Antonio got his cell phone and tried—and dialed 911"; that she heard Antonio make contact with the 9–1–1 dispatcher as "[h]e was standing beside the truck trying to talk on the phone. And then [Robinson] had come up and grabbed the cell phone and smashed it on the ground"; that she then picked up her own phone to call 9–1–1 and Robinson "[s]tarted yelling at [her] that he wanted to see [her] hands and that [she had] better not be calling the police"; that Robinson stated several times that "[i]f any of [them] called the police on him, that he would shoot [them]"; that, after making this statement, Robinson began to "scuffle" with Antonio again; that she then called 9–1–1 again when Robinson was not looking and left the line open so the dispatcher could hear the altercation; and that Antonio was transported to a hospital where he received stitches.

---

1. We note that the victim's first name is spelled two different ways in the record before this court. We elect to use the spelling provided in the appellant's and the appellee's briefs.

{¶ 7} Katie Holdren, dispatcher for the Union County Sheriff's office, testified that she dispatches police and fire departments and answers 9–1–1 calls; that on September 2, 2006, she answered a 9–1–1 call from an individual who stated that he had been assaulted at the Meadows Apartments; that the phone call abruptly ended before she ascertained a specific apartment number; that she then dispatched the police and fire departments and an ambulance to the general area of the Meadows Apartments; and that she received a second 9–1–1 call about the incident and "just let the police officers know on the radio that she had an open line and it was still continuing."

{¶ 8} Barbara Sharp–Patrick, dispatcher for the Union County Sheriff's office, testified that she answered a third 9–1–1 call concerning the incident on September 2, 2006, and that "at the time of the call, [she] was also talking with [Holdren] who had already started a medic because of the fact that there was a possible assault."

{¶ 9} Officer Robert Bartholomew of the Marysville Police Department testified that on September 2, 2006, he received a dispatch at approximately 3:30 a.m. requesting an ambulance in the area of the Meadows Apartments; that he and another officer arrived at the apartment complex at 3:30 a.m. and drove through looking for injured victims; that he arrived at the scene of the assault and spoke with Hoge "no later than 3:45 a.m."; and that "Antonio had a lot of blood around his mouth and it just looked like his lip was [sic] exploded."

{¶ 10} Officer Erik Collier of the Marysville Police Department testified that on September 2, 2006, he was dispatched to an assault at the Meadows Apartments; that the dispatcher was not able to identify an exact location, such as an apartment number; that he encountered Antonio who had a "severely cut lip. He had blood all over him * * *"; and that he called for an ambulance, which arrived within a few minutes.

{¶ 11} Robinson testified that he arrived at his apartment on September 2, 2006, and discovered that his live-in girlfriend was hosting a party; that he asked everyone in the apartment to leave; that he and Antonio began to argue; that he did not recall Antonio having a cell phone during the altercation or taking or throwing a cell phone; that he did not prevent Antonio from making a 9–1–1 call; that he did not threaten to shoot or kill anyone; and that only one altercation took place between him and Antonio.

{¶ 12} Antonio did not testify.

{¶ 13} Subsequently, the jury convicted Robinson of disrupting public services and intimidation of a victim.

{¶ 14} In April 2007, the trial court sentenced Robinson to a 15–month prison term on the conviction of disrupting public services and to a two-year prison term on the conviction of intimidation of a victim, to be served concurrently.

{¶ 15} It is from this judgment that Robinson appeals, presenting the following assignment of error for our review.

The jury lost its way when reviewing the evidence resulting in verdicts that are both against the manifest weight of the evidence and supported by insufficient evidence and must be reversed.

{¶ 16} In his sole assignment of error, Robinson asserts that the verdicts are against the manifest weight of the evidence and are not supported by sufficient evidence. Specifically, Robinson contends that he did not substantially interfere with law enforcement's ability to respond to any situation and that the state failed to prove that he inflicted any serious physical injury. Additionally, Robinson contends that he did not intimidate or threaten Hoge, and that even if he intimidated or threatened Hoge, she was not a witness as there was no pending criminal case or proceeding at that time. We agree that the verdict for disruption of public services is not supported by sufficient evidence but disagree that the verdict for intimidation of a victim is not supported by sufficient evidence or is against the manifest weight of the evidence.

{¶ 17} Initially, we wish to clarify that Robinson was indicted for intimidation of the victim, Antonio, and not intimidation of the witness, Hoge. This is clear from the indictment, although the bill of particulars, parts of the case-in-chief, and Robinson's closing argument at trial all referred to intimidation of Hoge. Further, both appellate attorneys heavily briefed the issue of Robinson's intimidation of Hoge. However, the indictment refers only to intimidation of a victim and the jury was instructed only on intimidation of a victim.

{¶ 18} Additionally, we note that Robinson failed to move for a Crim.R. 29(A) judgment of acquittal. Failing to move for a judgment of acquittal pursuant to Crim.R. 29(A), Robinson waived all but plain error regarding the sufficiency of the evidence. See *State v. Cooper*, 3d Dist. No. 9–06–49, 2007-Ohio-4937, 2007 WL 2757632, ¶ 23, citing Crim.R. 29(A); *State v. Roe* (1989), 41 Ohio St.3d 18, 25, 535 N.E.2d 1351; *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894; *Cleveland v. Ellsworth*, 8th Dist. No. 83040, 2004-Ohio-4092, 2004 WL 1753003, ¶ 7. To have plain error under Crim.R. 52(B), there must be an error, the error must be an obvious defect in the trial proceedings, and the error must have affected substantial rights. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Plain error must be used "with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice." Id.

{¶ 19} The following standards of review apply throughout.

### Standards of Review

{¶ 20} When an appellate court reviews a record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, citing *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Sufficiency is a test of adequacy (1997), *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, and the question of whether evidence is sufficient to sustain a verdict is one of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148, superseded on other grounds by state constitutional amendment as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 103, 684 N.E.2d 668.

{¶ 21} When an appellate court analyzes a conviction under the manifest-weight standard, it must review the entire record, weigh all of the evidence and all of the reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. Only in exceptional cases, where the evidence "weighs heavily against the conviction," should an appellate court overturn the trial court's judgment. Id.

### Disrupting Public Services

{¶ 22} Robinson was convicted of disrupting public services under R.C. 2909.04(A), which provides:

No person, purposely by any means or knowingly by damaging or tampering with any property, shall do any of the following:

(1) Interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications; radar, loran, radio, or other electronic aids to air or marine navigation or communications; or amateur or citizens band radio communications being used for public service or emergency communications;

(2) Interrupt or impair public transportation, including without limitation school bus transportation, or water supply, gas, power, or other utility service to the public;

(3) Substantially impair the ability of law enforcement officers, firefighters, rescue personnel, emergency medical services personnel, or emergency facility personnel to respond to an emergency or to protect and preserve any person or property from serious physical harm.

{¶ 23} Robinson argues that his conviction of disrupting public services was not supported by sufficient evidence because he did not cause serious physical harm to the victim and because he inflicted the injury to the victim prior to any call for emergency services. However, before addressing the merits of Robinson's argument, we must first examine whether destruction of a private cell phone constitutes disruption of public services within the meaning of R.C. 2909.04.

{¶ 24} When interpreting a statute, it is axiomatic that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for an appellate court to apply the rules of statutory interpretation. *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, 783 N.E.2d 591, ¶ 33, citing *State ex rel. Jones v. Conrad* (2001), 92 Ohio St.3d 389, 392, 750 N.E.2d 583.

{¶ 25} Here, we find that R.C. 2909.04(A) clearly and unambiguously prohibits substantial interference with public emergency systems and utilities and not destruction of a single, private telephone or cell phone. Nevertheless, as we believe that several other districts have misinterpreted the statute, we will continue our discussion as though the statute were ambiguous.

{¶ 26} Where the meaning of a statute is ambiguous, a court may examine legislative history or examine the statute in pari materia in order to ascertain its meaning. *State v. Jackson*, 102 Ohio St.3d 380, 2004-Ohio-3206, 811 N.E.2d 68, ¶ 34; *State ex rel. Pratt v. Weygandt* (1956), 164 Ohio St. 463, 58 O.O. 315, 132 N.E.2d 191, paragraph two of the syllabus. " 'In determining legislative intent when faced with an ambiguous statute, the court may consider several factors such as circumstances under which the statute was enacted, the objective of the statute, and the consequences of a particular construction.' " *Lima v. State*, 3d Dist. No. 1–07–21, 177 Ohio App.3d 744, 2007-Ohio-6419, 896 N.E.2d 149, ¶ 37, quoting *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 40, 741 N.E.2d 121. Additionally, " 'a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body.' " *Jackson*, at ¶ 34, quoting *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347. Further, a court is permitted to consider laws concerning the same or similar subjects in

order to discern legislative intent. R.C. 1.49(D). " 'Statutes relating to the same matter or subject * * * are *in pari materia* and should be read together to ascertain and effectuate if possible the legislative intent.' " *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 773 N.E.2d 536, 2002-Ohio-4172, ¶ 20, quoting *Weygandt* at paragraph two of the syllabus.

{¶ 27} The Legislative Service Commission comment to Section 1, Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1919–1920, which enacted R.C. 2909.04, discloses that the General Assembly intended the offense of disrupting public services to include:

[A]ny substantial interference with utility or emergency services, including mass communications, public service communications, navigational aids, transportation, water supply, gas, power, and other utility services.

The section also includes serious interference with police, firemen, or rescue personnel in answering an emergency call or protecting life, limb, or property. Examples of violations include cutting fire hoses, pouring water into fire hydrants in freezing weather, deflating the tires of emergency vehicles, or forming a human cordon around a fire for the purpose of keeping firemen from putting it out.

{¶ 28} Additionally, the 1971 final report of the Technical Committee to Study Ohio Criminal Laws and Procedures reveals:

The Technical Committee intends that the term "public" include not only utility services provided to the public as a whole but any sizable segment of the public. Thus, in addition to including property belonging to telephone, telegraph, gas, electric, public transit, water, or sewage companies which provide utility service to the public as a whole, other utility services such as school bus transportation are included.

Proposed Ohio Criminal Code by the Ohio Legislative Service Commission, Final Report of the Technical Committee (March 1971) 130.

{¶ 29} Thus, it is clear that private telephones and cell phones were not intended to be covered by R.C. 2909.04, although several appellate districts have upheld convictions for disrupting public services under R.C. 2909.04(A)(1) and 2909.04(A)(3) when the defendant had destroyed a private telephone. See *State v. Yoakum,* 5th Dist. No. 01CA005, 2002-Ohio-249, 2002 WL 63696; *State v. Thomas,* 2d Dist. No. 19435, 2003-Ohio-5746, 2003 WL 22429536; *State v. Johnson,* 8th Dist. Nos. 81692 & 81693, 2003-Ohio-3241, 2003 WL 21419631; *State v. Brown* (1994), 97 Ohio App.3d 293, 646 N.E.2d 838.

{¶ 30} We respectfully disagree with the decisions of the Second, Fifth, and Eighth appellate districts, which found that destruction of a private telephone constitutes disruption of public services. The comments of the Technical Com-

mittee explain that public services include services provided to "the public as a whole" and "any sizeable segment of the public." Additionally, the examples provided in the comments include cutting fire hoses, pouring water into fire hydrants in freezing weather, deflating emergency vehicle tires, or forming a human cordon around a fire to keep firefighters out. Further, subsections (A)(1) and (A)(2) of R.C. 2909.04 refer to "mass communications," "public service communications," "utility service to the public," and "public transportation." Based on the legislative history of R.C. 2909.04 and the reading of its subsections in pari materia, we find that the general assembly intended the offense of disrupting public services to prohibit serious interference with public emergency systems and utilities, not destruction of a single, private telephone or cell phone.

{¶ 31} Moreover, even if destruction of a cell phone constituted disruption of public services, the state failed to prove the element of substantial impairment.

{¶ 32} Robinson contends that the state failed to prove beyond a reasonable doubt the element of "substantial impairment." R.C. 2909.04(A)(3) requires that the offender "substantially impair" the ability of the emergency or law-enforcement personnel to respond to an emergency or protect an individual from serious physical harm.

{¶ 33} Here, both 9-1-1 dispatchers testified that they dispatched emergency services after they received Antonio's first 9-1-1 phone call. Additionally, although the dispatcher did not receive a specific apartment number, testimony was heard that the officers arrived at the scene of the assault within minutes of being dispatched. Thus, destruction of the cell phone did not substantially impair the ability of emergency service providers to respond to the incident. Therefore, even if destruction of a cell phone was a violation of R.C. 2909.04(A)(3), the state failed to prove substantial impairment beyond a reasonable doubt.

{¶ 34} Because R.C. 2909.04(A)(3) does not prohibit destruction of a private telephone or cell phone and because the state failed to prove substantial impairment beyond a reasonable doubt, we find that Robinson's conviction for disrupting public services was not supported by sufficient evidence. Accordingly, we need not address Robinson's manifest weight argument on this count of the conviction.

*Intimidation of a Victim*

{¶ 35} Robinson was convicted of intimidation of a victim under R.C. 2921.04(B), which provides:

No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness

involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness.

Accordingly, the issue here is whether Robinson attempted to influence, intimidated, or hindered Antonio in the filing or prosecution of criminal charges.

{¶ 36} Here, Robinson first contends that there is insufficient evidence supporting his conviction for intimidation of a victim. However, testimony was heard that Robinson told Antonio after their initial altercation and after Antonio called 9–1–1 that if any of those present called the police, he would shoot them. This court and other courts have previously found that such conduct may constitute intimidation of a victim.[2] See *State v. Sessler,* 3d Dist. No. 3–06–23, 2007-Ohio-4931, 2007 WL 2757462; *State v. Malone,* 3d Dist. No. 9–06–43, 2007-Ohio-5484, 2007 WL 2983155; *State v. Ball,* 6th Dist. No. E–02–024, 2004-Ohio-2586, 2004 WL 1125193; *State v. Hunt,* 9th Dist. No. 21515, 2003-Ohio-6120, 2003 WL 22715616. We are bound by precedent and therefore find that Robinson's intimidation conviction is supported by sufficient evidence.

{¶ 37} Next, Robinson contends that his intimidation conviction is against the manifest weight of the evidence. As stated above, Hoge testified that Robinson told Antonio after their initial altercation and after Antonio called 9–1–1 that if any of those present called the police, he would shoot them. Although Robinson testified that he did not threaten or prevent Antonio from calling 9–1–1, it is clear that the jury found Hoge's testimony to be more credible. Based on our review of the record, we cannot say that the jury clearly lost its way. Thus, we find that Robinson's intimidation conviction was not against the weight of the evidence.

{¶ 38} Accordingly, we sustain Robinson's assignment of error as it pertains to his disruption of public services argument and overrule his assignment of error as it pertains to his intimidation of a victim argument.

{¶ 39} Having found error prejudicial to the appellant in the particulars assigned and argued as to his disruption of public services conviction, but having found no error prejudicial to the appellant in the particulars assigned and argued as to his intimidation of a victim conviction, we affirm in part, reverse in part, and remand this cause for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

---

2. We note that R.C. 2921.04 does not define "filing or prosecution." This author questions whether conduct intended to deter a victim from *reporting* criminal conduct meets this requirement. See R.C. 2901.04(A). A *filing* usually denotes some type of formal or official action, and as used in this statute, *prosecution* would appear to mean proceedings subsequent to the filing of formal charges.

PRESTON, J., concurs.

WILLAMOWSKI, J., concurs separately.

WILLAMOWSKI, JUDGE, concurring separately.

{¶ 40} In considering whether the state presented sufficient evidence to convict Robinson of disrupting public services in violation of R.C. 2909.04(A)(3), I agree with the majority's analysis insofar as it concludes that the state failed to prove the element of substantial impairment.[3] In my opinion, such conclusion renders moot the issue of whether the destruction of a private cell phone constitutes disruption of a public service. I concur in the remainder of the opinion.

---

**3.** Had appellant been indicted under R.C. 2909.04(A)(1), the element of substantial impairment would not apply.