DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} In a busy grocery store parking lot in Pittsburgh, Pennsylvania, James Tayse crawled into the backseat of a Jeep Grand Cherokee while the Jeep's owner was entering the driver's seat. Mr. Tayse put a knife to the throat of the baby girl sitting in the carseat beside him and ordered her mother to drive. So began a five-hour ordeal that ended that afternoon in Cleveland, Ohio. Mr. Tayse was convicted of committing fourteen crimes along the way, including felonious assault and multiple counts of kidnapping, rape, and aggravated robbery with sexually violent predator and repeat violent offender specifications. He was also convicted of grand theft, disrupting public services, and failure to comply with a signal or order of a police officer.
 {¶ 2} Mr. Tayse has appealed, arguing that four of his five convictions for aggravated robbery and his convictions for the sexually violent predator specifications in each rape count, *Page 2 
along with his convictions for felonious assault and disrupting public services, are against the manifest weight of the evidence. His second assignment of error is that the trial court incorrectly denied his motion to dismiss the repeat violent offender specifications in the indictment because he does not meet the statutory criteria. His final assignment of error is that the trial court incorrectly overruled his motion for acquittal on the charge of failure to comply with a signal or order of a police officer because according to him, the State did not present sufficient evidence to establish venue.
 {¶ 3} This Court affirms Mr. Tayse's convictions for aggravated robbery, felonious assault, and the sexually violent predator specifications because the jury did not lose its way and create a manifest miscarriage of justice in finding he was guilty of each offense. This Court reverses Mr. Tayse's conviction for disrupting public services, however, because it was not based on sufficient evidence. This Court affirms Mr. Tayse's conviction on the repeat violent offender specifications because the Pennsylvania statute under which Mr. Tayse was previously convicted is substantially equivalent to an Ohio offense of violence that is classified as a first-degree felony. This Court affirms Mr. Tayse's conviction for failure to comply with a signal or order of a police officer because the evidence presented was sufficient to find that he committed the offense as part of a course of criminal conduct.
 BACKGROUND {¶ 4} Amanda C. went grocery shopping with her sixteen-month-old daughter, Sophie, the day before Easter 2007 at a Giant Eagle store near her home in a suburb of Pittsburgh, Pennsylvania. At close to 10:30 a.m., after she loaded her baby and her groceries into her Jeep Grand Cherokee, Amanda locked the doors and walked to the nearby cart-return. As she headed back to her Jeep, she noticed a man approaching, but assumed he was intending to enter a *Page 3 
neighboring car. Just as Amanda unlocked the doors and sat down in the driver's seat, James Tayse slipped into the seat directly behind her. He leaned over and put a small kitchen knife up to the side of Sophie's neck and ordered Amanda to "[d]rive, or I'll cut her." He told Amanda that he needed to get out of town because he was going away for life. Mr. Tayse kept the knife to Sophie's neck until the Jeep reached the main road, then he crawled up into the front passenger's seat and held the knife on his lap.
 {¶ 5} Amanda told Mr. Tayse that she did not have cash for the toll road, and he told her to stop at an ATM. Amanda withdrew $200 from her bank account using a drive-up ATM at a bank in Harmarville, PA. She handed the money directly to Mr. Tayse. They got on the Pennsylvania Turnpike, and Mr. Tayse warned her "not to speed and not to do anything stupid to get [them] caught." Amanda testified that, when she was approaching the toll booth operator at the end of the Pennsylvania Turnpike, Mr. Tayse again warned her not to do anything stupid. At that time, she glanced over at Mr. Tayse and found that, for the first time, the knife was not visible.
 {¶ 6} They followed Interstate 76 until Mr. Tayse told her to take an exit. He told her that she was to pay for a room at the America's Best Value Inn at Route 43 in Brimfield Township, Ohio. Mr. Tayse insisted on carrying Sophie into the motel lobby. According to Amanda, Mr. Tayse "said he did have the knife under Sophie's jacket and not to do anything stupid." Amanda testified that she complied and did not attempt to alert the sole worker at the desk because "[Mr. Tayse] had a knife to [her] child." Once inside the motel room, Mr. Tayse emptied his pockets, including the knife, onto the nightstand and lay down on the bed watching television while Amanda tried to get Sophie to drink some milk. *Page 4 
 {¶ 7} Soon Mr. Tayse approached Amanda and said, "[p]ut [Sophie] down and take off all your clothes." Although Amanda begged him not to make her, Mr. Tayse insisted that she perform oral sex on him. After that, he raped her vaginally. After ordering her to clean him up and take a shower, he demanded oral sex again.
 {¶ 8} After that, Mr. Tayse started going through Amanda's purse looking for more money and credit cards. He ordered her to remove her jewelry, and he turned off her cellular telephone. They returned to the Jeep where Mr. Tayse again ordered her to drive. He told her to stop at a BP gas station on Grant Street in Akron. Amanda testified that Mr. Tayse carried Sophie and stood behind her while she used an ATM to withdraw money from her account. She was unable to withdraw more than $100 at that time. She gave the money to Mr. Tayse. When they returned to the Jeep, he told her they had to find a way to get more money. They stopped at a check cashing store in Cuyahoga Falls, but the teller refused to cash Amanda's $1500 check. The woman suggested they try the bank inside the local Giant Eagle.
 {¶ 9} At Giant Eagle, Mr. Tayse again carried Sophie into the store. They tried unsuccessfully to cash the check at the service desk and then at the bank counter. In an attempt to stall inside the store, Amanda claimed she needed diapers. While they were waiting in line, Mr. Tayse told her to buy five $100 American Express gift cards. She gave the cards to him. They returned to the Jeep, and Amanda drove toward Cleveland until Mr. Tayse told her to take an exit. They drove deep into a residential neighborhood before Mr. Tayse ordered her to stop the car and get out. He allowed her to get Sophie from the backseat before he drove the Jeep out of sight.
 {¶ 10} The next day, while driving in Cleveland, a woman who had heard about the incident on television spotted Amanda's Jeep Grand Cherokee and called the police. Cleveland *Page 5 
police officers in two separate vehicles pursued the Jeep, using lights and sirens, through deep snow on icy roads. The two police cars attempted at one point to trap the Jeep, but Mr. Tayse accelerated and turned a corner. The police officers and witnesses testified that the Jeep fishtailed around a corner onto a residential street, bouncing off the curbs on either side, before slamming into a parked car and rebounding to strike another car parked on the opposite side of the street. Both of the parked cars were heavily damaged, and an occupant of one of them was injured. Mr. Tayse jumped from the Jeep and tried to flee on foot, but was quickly caught by the officers.
 MANIFEST WEIGHT {¶ 11} Mr. Tayse's first assignment of error is that several of his convictions are against the manifest weight of the evidence. When a defendant argues that his convictions are against the manifest weight of the evidence, this Court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 AGGRAVATED ROBBERY {¶ 12} Mr. Tayse has argued that four of his five convictions for aggravated robbery are against the manifest weight of the evidence. Section 2911.01(A)(1) of the Ohio Revised Code provides that, "[n]o person, in attempting or committing a theft offense . . . shall . . . [h]ave a deadly weapon on or about [his] person or under [his] control and either display the weapon, brandish it, indicate that [he] possesses it, or use it." R.C. 2911.01(A)(1). Mr. Tayse has argued that there was no evidence that he had displayed, brandished, used, or indicated he had a knife *Page 6 
when he stole Amanda's jewelry, forced her to pay for the hotel room, forced her to withdraw money from the ATM in Akron, or told her to buy the gift cards at the Giant Eagle store in Cuyahoga Falls.
 {¶ 13} Contrary to Mr. Tayse's argument, Amanda testified that, when he ordered her into the motel lobby to check in, he told her he would carry the baby with the knife under her jacket so Amanda better not do anything stupid. Inside the motel room, Mr. Tayse put the knife on the nightstand and later on the bed beside him while he raped her. It was just minutes after he had raped her for the third time that Mr. Tayse demanded that she surrender her jewelry.
 {¶ 14} Amanda testified that, after they left the motel, she never saw the knife again and Mr. Tayse never mentioned it again. The two theft offenses that occurred after they left the motel happened at an ATM inside a gas station in Akron and at a Giant Eagle in Cuyahoga Falls. Photographs taken from security cameras at both locations corroborate Amanda's testimony that Mr. Tayse carried the baby to and from the Jeep each time.
 {¶ 15} Amanda testified that she was unable to alert the teller at the check cashing store because "[Mr. Tayse] was staring right at me . . . I didn't know where the knife was, I didn't know if he would be pulling it out." She said that, when they were standing in line at the Giant Eagle store in Cuyahoga Falls, Mr. Tayse was carrying Sophie and Amanda "didn't feel like [she] could scream because [she] didn't know where the knife was [or] . . . how close it was to [Sophie's] body." Amanda testified that she was under threat from the knife throughout the entire five-hour ordeal. "He was in my car. He was holding my daughter [and he] . . . had the knife. . . . He had complete control over my daughter and I . . . [a]nd my job is to take care of my daughter." Mr. Tayse has argued that, without evidence that he showed Amanda the knife again *Page 7 
or reminded her that he had the knife just before each theft, he cannot be convicted of aggravated robbery. He has not cited any authority for this proposition.
 {¶ 16} This incident started with Mr. Tayse holding a knife to Sophie's neck and ordering her mother to "[d]rive, or [he'd] cut her." From the time it began until the time they exited the Pennsylvania Turnpike, the knife remained visible on Mr. Tayse's lap. He told Amanda he was holding the knife against Sophie's body as they entered the motel lobby and kept it visible the entire time they were in the motel room. By the time Mr. Tayse committed the last two theft offenses, he had held Amanda and her daughter captive for at least three hours and forced Amanda to drive into another state, had demanded cash at one ATM, had stolen Amanda's jewelry, and raped her three times, all while the knife remained visible to his victim.
 {¶ 17} Each of the five counts of aggravated robbery were "part of a course of criminal conduct" charged together in one indictment. Crim. R. 8(A). Amanda testified that she spent the entire afternoon cooperating with her assailant in order to keep him from stabbing her baby as he had initially threatened to do when he first appeared in her Jeep. Weighing the evidence and all reasonable inferences, this Court cannot say the jury lost its way and created a manifest miscarriage of justice by finding that Mr. Tayse used the knife to force Amanda to surrender her money at the ATM in Akron and the gift cards at the Giant Eagle in Cuyahoga Falls. To the extent that Mr. Tayse's first assignment of error relates to his convictions for aggravated robbery, it is overruled.
 FELONIOUS ASSAULT {¶ 18} Part of Mr. Tayse's first assignment of error is that his felonious assault conviction was against the manifest weight of the evidence. His argument, however, is aimed at sufficiency of the evidence as he has claimed there was no evidence that he knowingly attempted *Page 8 
to cause physical harm to the baby. Section 2903.11(A)(2) of the Ohio Revised Code provides that, "[n]o person shall knowingly . . . [c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2). "[T]he act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of the offense of `felonious assault.'" State v.Green, 58 Ohio St. 3d 239, syllabus (1991) (quoting R.C. 2903.11(A)(2)).
 {¶ 19} Amanda testified that, when Mr. Tayse first entered the Jeep, he held a knife at the baby's throat and told her to "[d]rive or [he'd] cut [the baby]." This evidence, if believed, is sufficient to support his conviction for felonious assault. See id. Furthermore, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice in finding, based on Amanda's uncontroverted testimony, that Mr. Tayse committed felonious assault in violation of Section 2903.11(A)(2) of the Ohio Revised Code. To the extent that Mr. Tayse's first assignment of error attacks his felonious assault conviction, it is overruled.
 DISRUPTING PUBLIC SERVICES {¶ 20} Mr. Tayse has argued that his conviction for disrupting public services is against the manifest weight of the evidence because turning off a cellular telephone is not sufficiently disruptive to constitute a violation of the statute. Although couched in terms of manifest weight, Mr. Tayse's argument is that the conviction is not supported by sufficient evidence. Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. *Page 9 
Tayse's guilt beyond a reasonable doubt. State v. Jenks,61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 21} Section 2909.04(A)(1) provides that "[n]o person, purposely by any means or knowingly by damaging or tampering with any property, shall . . . [interrupt or impair television, radio, telephone, telegraph, or other mass communications service; police, fire, or other public service communications. . . ." R.C. 2909.04(A)(1). Amanda testified that Mr. Tayse turned off her cell phone so that she could not make or receive phone calls. The State has argued that Mr. Tayse's conduct is similar to that of the defendant in State v. Spence, 9th Dist. No. 11114,1983 WL 2259 (Dec. 21, 1983). In that case, this Court affirmed a conviction under Section 2909.04 of a defendant who had cut a retail store's telephone line in order to disable the alarm system. Id. at *2.
 {¶ 22} Based on the legislative history and a reading of the entire statute as a whole, the Third District Court of Appeals recently held that the unambiguous language of Section 2909.04(A) of the Ohio Revised Code does not prohibit the destruction of a single, private telephone or cell phone. State v. Robinson, 177 Ohio App. 3d 560, 2008-Ohio-4160, at ¶ 25. That court concluded "that the general assembly intended the offense of disrupting public services to prohibit serious interference with public emergency systems and utilities, not destruction of a single, private telephone or cell phone." Id. at ¶ 30. The Ohio Supreme Court has determined that a conflict exists between that decision and those of the Second, Fifth, and Eighth Districts. State v.Robinson, 120 Ohio St. 3d 1451, 2008-Ohio-6813 (citing State v.Yoakum, 5th Dist. No. 01CA005, 2002 WL 63696 (Jan. 17, 2002); State v.Thomas, 2d Dist. No. 19435, 2003-Ohio-5746; State v. Johnson, 8th Dist. Nos. 81692, 81693, 2003-Ohio-3241; State v. Brown, 97 Ohio App. 3d 293
(1994)). Thus, the Supreme Court is currently considering *Page 10 
whether "the damaging of a single, private telephone or cellular telephone disrupts] `public services' sufficiently to constitute a violation of R.C. 2909.04(A)(3)?" Id.
 {¶ 23} Regardless of whether the damaging of a single, private telephone or cellular telephone is sufficient to violate the statute, the State's argument must fail in this case, as it has cited no authority for the proposition that merely turning off one cellular telephone violates the statute. In State v. Spence, 9th Dist. No. 11114,1983 WL 2259 *1 (Dec. 21, 1983), the defendant was accused of cutting a telephone line in order to disable an alarm. Similarly, in each of the cases noted by the Supreme Court to be in conflict with State v.Robinson, the evidence indicated that a telephone or its connection was damaged or destroyed in some way. In this case, Mr. Tayse was not accused of damaging or destroying his victim's cell phone. He was accused of simply turning it off. The State has not cited any authority for the proposition that turning off a cell phone is a sufficient disruption of public services to violate Section 2909.04(A)(1). As the evidence, if believed, would not have convinced an average juror of Mr. Tayse's guilt beyond a reasonable doubt, his first assignment of error is sustained to the extent that it addresses his conviction for disrupting public services.
 SEXUALLY VIOLENT PREDATOR SPECIFICATIONS {¶ 24} The final part of Mr. Tayse's first assignment of error is that his convictions for the sexually violent predator specification in each of the rape counts are against the manifest weight of the evidence. Section 2971.01(H)(1) of the Ohio Revised Code defines "[s]exually violent predator" as "a person who . . . commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1). The statute provides various factors that "may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses." *Page 11 
R.C. 2971.01(H)(2). The factors include, among others, "(a) [t]he person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. . . . (c) [available information or evidence suggests that the person chronically commits offenses with a sexual motivation. . . . [and] (f) [a]ny other relevant evidence." Id.
 {¶ 25} Mr. Tayse conceded in his brief that his 1997 conviction in Pennsylvania satisfies the statutory requirement that one charged with this specification must have "commit[ted] a sexually violent offense," but has argued that the evidence did not support a finding that he was also "likely to engage in the future in one or more sexually violent offenses." R.C. 2971.01(H)(1). He has cited State v. Smith,104 Ohio St. 3d 106, 2004-Ohio-6238, at ¶ 27, for the proposition that a conviction of a sexually violent offense cannot support the specification that the offender is a sexually violent predator under Section 2971.01(H)(1) if the conduct leading to both the conviction and the specification are charged in the same indictment.
 {¶ 26} The State presented two witnesses regarding Mr. Tayse's sexually violent history. Rhonda and her sixteen-year-old daughter, Jill, testified that when Jill was eleven years old, Rhonda dated Mr. Tayse and they lived with him for a time. Rhonda testified that Mr. Tayse beat her frequently, including two times that she had to have in-patient hospital treatment. She also testified that Mr. Tayse once forced her to perform oral sex on him by holding a knife to her neck. Her daughter, Jill, testified that Mr. Tayse raped her, both orally and vaginally, more than twenty times when she was eleven and twelve years old. There was no evidence that any of these allegations ever resulted in criminal convictions for Mr. Tayse.
 {¶ 27} Although he has correctly stated the Ohio Supreme Court's holding in Smith, Mr. Tayse has failed to consider the impact of the amendment to Section 2971.01(H) that became effective in April 2005. "Based on the statute's current language, a person need not have already *Page 12 
been convicted of a sexually violent offense at the time of indictment to be indicted for and subsequently found guilty of a sexually violent predator specification." State v. Hardges, 9th Dist. No. 24175,2008-Ohio-5567, at ¶ 50. Mr. Tayse's current convictions for three counts of rape satisfy the statutory requirement that he must have committed a sexually violent offense. The evidence that Mr. Tayse was convicted in 1997 for statutory sexual assault of a twelve-year-old girl, as well as the testimony of Jill and her mother alleging additional violent sexual acts, supports the trial court's finding that Mr. Tayse is likely to engage in other sexually violent offenses in the future. See R.C. 2971.01(H). The trial court did not lose its way and create a manifest miscarriage of justice in finding Mr. Tayse guilty of the sexually violent predator specifications. To the extent that Mr. Tayse's first assignment of error addresses the sexually violent predator specifications, it is overruled.
 REPEAT VIOLENT OFFENDER SPECIFICATIONS {¶ 28} Mr. Tayse's second assignment of error is that the trial court incorrectly denied his motion to dismiss the repeat violent offender specifications in the indictment because he does not meet the statutory criteria. The trial court found Mr. Tayse guilty of the repeat violent offender specifications in each of the kidnapping, rape, and aggravated robbery counts as well as the felonious assault count. The court merged all of these specifications into the repeat violent offender specification in count one of the indictment. This Court reviews a denial of a motion to dismiss de novo. State v. Whalen, 9th Dist. No. 08CA009317, 2008-Ohio-6739, at ¶ 7.
 {¶ 29} In 1997, Mr. Tayse was convicted of statutory sexual assault in Pennsylvania for engaging in sexual intercourse with a twelve-year-old girl. The statute he violated provided that "a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is four or more years older than the *Page 13 
complainant and the complainant and the person are not married to each other." 18 Pa. Cons. Stat. § 3122.1.
 {¶ 30} Under Ohio law, a repeat violent offender is "a person about whom both of the following apply:
 (1) The person is being sentenced for committing or for complicity in committing any of the following:
 (a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;
 (b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (DD)(1)(a) of this
section.
 (2) The person previously was convicted of or pleaded guilty to an offense described in division (DD)(1)(a) or (b) of this section."
R.C. 2929.01(DD). Mr. Tayse has conceded that he was being sentenced for qualifying offenses under subsection (1)(a) of this section. He has argued, however, that he does not qualify under the second prong of the analysis because his prior conviction for statutory sexual assault of a minor in Pennsylvania is not substantially equivalent to an Ohio offense of violence of the first or second degree. Specifically, Mr. Tayse has suggested that the Pennsylvania statute under which he was convicted is substantially similar to Section 2907.04(A) of the Ohio Revised Code, governing unlawful sexual conduct with a minor.
 {¶ 31} The Ohio statute proscribing unlawful sexual conduct with a minor provides that "[n]o person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard." R.C. 2907.04(A). Mr. Tayse has argued that a first violation of Section 2907.04(A) of the Ohio Revised Code is not a felony of the first or second degree and would not qualify as a prior *Page 14 
offense for purposes of the repeat violent offender specification. In response, the State has argued that Section 2907.04(A) is not substantially similar to the Pennsylvania statute because it requires that the defendant know the age of the victim or be reckless in that regard.
 {¶ 32} The trial court agreed with the State's argument that Mr. Tayse's prior conviction was substantially equivalent to the offense of rape in Ohio. Section 2907.02(A)(2) of Ohio Revised Code provides that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender . . . when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(2). Under Ohio law, such conduct is defined as rape, an offense of violence, and is classified as a first-degree felony. R.C. 2907.02(B); R.C. 2901.01(A)(9)(a).
 {¶ 33} The Pennsylvania statute proscribing statutory sexual assault is substantially similar to Ohio's rape statute. Both statutes are designed to penalize offenders who engage in sexual conduct with children under a certain age regardless of the offender's knowledge of the victim's age. Under Section 2907.02(A)(2) of the Ohio Revised Code, engaging in sexual relations with a person under the age of thirteen is a strict liability offense. The offender's knowledge of or recklessness as to the age of the victim is not relevant. Similarly, Mr. Tayse was convicted under a strict liability statute in Pennsylvania for engaging in sexual relations with a girl who was less than 16 years old.18 Pa. Cons. Stat. § 3122.1. The statutes need not be identical if the purpose is the same. See State v. Swingle, 9th Dist. No. 8171, 1976 WL 188936 at *2 (Nov. 10, 1976). As the Pennsylvania statute under which Mr. Tayse was convicted in 1997 is substantially equivalent to an Ohio offense of violence that is classified as a first-degree felony, the trial court correctly denied his motion to dismiss the repeat violent offender specifications. Mr. Tayse's second assignment of error is overruled. *Page 15 
 VENUE {¶ 34} Mr. Tayse's third assignment of error is that the trial court incorrectly overruled his motion for acquittal under Rule 29 of the Ohio Rules of Criminal Procedure because the State did not present sufficient evidence to establish venue for the charge of failure to comply with a signal or order of a police officer. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Tayse's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 35} Section 2901.12(H) of the Ohio Revised Code provides that, when an offender commits several offenses in different jurisdictions as part of one "course of criminal conduct," he may be tried for all of the offenses in any jurisdiction in which any offense or any element of an offense occurred. R.C. 2901.12(H). According to the statute, offenses involving the same victims, offenses "committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective," and those "committed along the offender's line of travel in this state, regardless of the offender's point of origin or destination" are prima-facie evidence of a course of criminal conduct. R.C. 2901.12(H)(1), (3), (6).
 {¶ 36} According to Cleveland police officers and witnesses at the scene, Mr. Tayse ignored police warning lights, a siren, and shouted commands from police officers while fleeing, first in Amanda's Jeep and later on foot. The entire chase occurred within the city limits of *Page 16 
Cleveland in Cuyahoga County, Ohio. In the same indictment, Mr. Tayse was also charged with and later convicted of two counts of aggravated robbery that occurred in Summit County, Ohio. This Court agrees with the trial court's determination that Mr. Tayse's conduct in failing to comply with a signal or order of a police officer while driving the victim's Jeep through Cleveland the day after releasing Amanda and her baby was part of a continuing course of criminal conduct that encompassed all of the crimes charged in the indictment. The offense was "committed as part of the same transaction or chain of events" and occurred "along [Mr. Tayse's] line of travel in [Ohio]." R.C. 2901.12(H)(3), (6). The trial court correctly denied Mr. Tayse's motion for acquittal on the charge of failure to comply with a signal or order of a police officer because the evidence, if believed, would have convinced an average juror of Mr. Tayse's guilt beyond a reasonable doubt. Mr. Tayse's third assignment of error is overruled.
 CONCLUSION {¶ 37} To the extent that it addresses his conviction for disrupting public services, Mr. Tayse's first assignment of error is sustained and his conviction for disrupting public services is reversed because it was not based on sufficient evidence. The remainder of Mr. Tayse's first assignment of error is overruled and his convictions for aggravated robbery, felonious assault, and the sexually violent predator specifications are affirmed.
 {¶ 38} Mr. Tayse's second assignment of error is overruled and his repeat violent offender conviction is affirmed because the Pennsylvania statute under which he was convicted in 1997 is substantially equivalent to an Ohio offense of violence that is classified as a first-degree felony. Finally, Mr. Tayse's third assignment of error is overruled and his conviction for failure to comply with a signal or order of a police officer is affirmed because the evidence presented was sufficient to find that he committed the offense as part of a "course of criminal *Page 17 
conduct" that included offenses committed in Summit County, Ohio. R.C. 2901.12(H). The judgment of the Summit County Common Pleas Court is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion.
Affirmed in part, reversed in part, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed equally to both parties.
MOORE, P. J. BAIRD, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.) *Page 1