19 F.3d 20
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Luther A. WOODFORK, Petitioner-Appellant,
v.
Harry K. RUSSELL, Respondent-Appellee.
 No. 92-4301.
 United States Court of Appeals, Sixth Circuit.
 Feb. 24, 1994.
 
 Before: NELSON and NORRIS, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a habeas corpus case brought under 28 U.S.C. Sec. 2254. The petitioner, Luther Woodfork, was convicted in an Ohio court on fifteen counts of possession of forged prescriptions and blank prescription forms. He argues that his Sixth Amendment right to effective assistance of counsel was compromised when his lawyer failed to pursue (both at trial and on appeal) a double jeopardy objection to consecutive sentencing on five of the counts of conviction.
 
 
 2
 Mr. Woodfork filed a habeas petition in federal district court in 1988. The petition was dismissed as meritless. On appeal, we held that although Mr. Woodfork had committed a procedural default by failing to press his ineffective assistance claims on direct appeal in the state courts,[1] the district court should have made a cause and prejudice analysis. On remand the district court found that Mr. Woodfork had shown cause for the procedural default in that appellate counsel--who was also trial counsel--could not be expected to assert deficiencies in his own performance at trial. The court further found, however, that Mr. Woodfork suffered no prejudice from the default because his double jeopardy claim lacked merit. Mr. Woodfork then perfected another appeal to this court.
 
 
 3
 After initially denying a request for a certificate of probable cause, this court reconsidered the matter and determined that
 
 
 4
 "[t]he question of whether the possession at one time of six forged prescriptions in different names requires a separate animus for each prescription is at least a close one and does raise a double jeopardy claim of some substance. Furthermore, the failure to object to the consecutive sentences may well have been prejudicial."
 
 
 5
 We granted the certificate of probable cause on this basis, and the case has now been considered on the briefs. Although we conclude that the double jeopardy claim was probably meritorious, we are unable to say, on the record before us, whether the lawyer's failure to raise the claim when it should have been raised was an error so serious as to compel the conclusion that the lawyer was not functioning as the "counsel" guaranteed Mr. Woodfork by the Sixth Amendment. We shall therefore remand the case to let the district court decide whether the lawyer's error was of constitutional magnitude.
 
 
 6
 * On December 4, 1984, officials of the Drug Enforcement Administration conducted surveillance of petitioner Woodfork's activities at a mall in Lima, Ohio. Those activities--which included an attempt, through an accomplice, to have a false prescription filled--confirmed the officers' suspicions that Mr. Woodfork was dealing in forged prescriptions. The agents placed Mr. Woodfork under arrest and conducted a lawful search of his car. Five forged prescriptions, nine blank prescription forms, a stamp and ink pad, and pieces of a torn prescription form were found in the car.
 
 
 7
 Mr. Woodfork went to trial before a state court judge on a fifteen-count indictment. The first six counts charged Woodfork with possession of forged prescriptions in violation of O.R.C. Sec. 2925.23(B)(1), a statute that prohibits the making, uttering, sale or possession of a false or forged prescription. The last nine counts charged violations of O.R.C. Sec. 2925.23(B)(2), which prohibits the intentional making, uttering, sale or possession of a blank preprinted prescription form. The judge found Mr. Woodfork guilty on all 15 counts.
 
 
 8
 The nine counts charging possession of blank preprinted forms were merged for sentencing purposes, and Mr. Woodfork received a total sentence of imprisonment for one and one-half years with respect to those counts. The court imposed a sentence of imprisonment for two years as to each of the first six counts, with the sentences on counts one and two to run concurrently and the sentences on counts three through six to run consecutively to one another and to the one-and-one-half year term. Mr. Woodfork's court-appointed attorney voiced no objection to this sentence.
 
 II
 
 9
 The Double Jeopardy Clause prohibits, among other things, multiple punishments for the same offense. Brown v. Ohio, 432 U.S. 161, 165 (1977); North Carolina v. Pearce, 395 U.S. 711, 717 (1969). "Whether punishments are 'multiple' under the double jeopardy clause," this court has said, "is essentially a question of legislative intent." Banner v. Davis, 886 F.2d 777, 779-80 (6th Cir.1989), citing Ohio v. Johnson, 467 U.S. 493, 499 (1984); Missouri v. Hunter, 459 U.S. 359, 366-68 (1983). If the Ohio legislature intended to allow cumulative sentences for each simultaneously possessed forged prescription, the petitioner has no valid double jeopardy claim. Banner, 886 F.2d at 780. In determining what the state legislature intended, we typically defer to the state courts' interpretation of legislative intent. Id.
 
 
 10
 Ohio Revised Code Sec. 2941.25 sets forth the law with regard to related offenses. This section provides as follows:
 
 
 11
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 
 
 12
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 
 
 13
 The Ohio Supreme Court has held that O.R.C. Sec. 2941.25 permits a trial court to convict and impose cumulative sentences for two or more offenses arising from the same criminal transaction if the offenses "(1) were not allied and of similar import, (2) were committed separately or (3) were committed with a separate animus as to each offense." State v. Bickerstaff, 10 Ohio St.3d 62, 66, 461 N.E.2d 892, 895 (1984). See also City of Newark v. Vazirani, 48 Ohio St.3d 81; 549 N.E.2d 520 (1990); State v. Rice, 69 Ohio St.2d 422, 433 N.E.2d 175 (1982).
 
 
 14
 Under Ohio law, offenses are considered "allied and of a similar import" when they "correspond to such a degree that commission of the one offense will result in the commission of the other." Rice, 69 Ohio St.2d at 424; 433 N.E.2d at 177-78. See also State v. Talley, 18 Ohio St.3d 152, 480 N.E.2d 439 (1985). Thus a defendant can be sentenced separately for each offense of which he is convicted, in the view of the Ohio Supreme Court, if the elements of the crimes are not exactly the same and one offense for which a separate sentence is imposed does not amount to a lesser included offense of another.
 
 
 15
 The government argues here that each forged prescription could give rise to a violation of O.R.C. Sec. 2925.23(B)(1), and that the violations do not correspond to such a degree that possession of one prescription constitutes possession of the other. Whether the Ohio Supreme Court would accept this argument strikes us as doubtful; that court has not yet had occasion to apply Sec. 2941.25 to a multiple possession case, and the legislative history of the section does not aid the government.
 
 
 16
 As described by the legislative commission that proposed its adoption, Sec. 2941.25 "prohibits 'shotgun' indictments and convictions for related offenses all growing out of the same transaction and motivated by the same animus." Final Report of the Ohio Legislative Service Commission's Technical Committee to Study Ohio Criminal Laws and Procedures on the Proposed Ohio Criminal Code, Comments to Proposed Section 2941.25 (1971). "Where the same conduct by the defendant technically amounts to two or more related offenses," said the Committee, "he should be guilty of one offense." The Committee went on to say that "where his conduct amounts to ... two or more offenses of the same kind committed at different times or with separate evil purpose as to each, then it should be possible to convict him of all such crimes." Id. (Emphasis added.)
 
 
 17
 In the case at bar the petitioner possessed, at one time, five forged documents that were substantially the same. It would be difficult to say that the petitioner's possession of each of the various forged prescriptions was temporally distinct or was motivated by different criminal purposes.
 
 
 18
 Furthermore, even if the test followed by Ohio's Supreme Court in Rice were applicable, Mr. Woodfork was susceptible to cumulative sentencing on each of the counts of conviction only if possession of five forged prescriptions amounts to five separate offenses. The statute provides that "no person shall intentionally make, utter, or sell, or knowingly possess a false or forged prescription." O.R.C. Sec. 2925.23(B)(1) (emphasis supplied). The government argues that the legislature's use of the word "a" means that possession of each forged prescription was intended to give rise to a separate violation of this section and was thus a separate "offense" within the meaning of Sec. 2941.25. No Ohio court has decided the issue, but several Ohio courts have concluded that other simultaneous possession crimes constituted single offenses for purposes of Sec. 2941.25.
 
 
 19
 In State v. Thompson, 46 Ohio App.3d 157, 546 N.E.2d 441 (Summit 1988), the court held in its syllabus that two firearm possession counts stemming from the simultaneous possession of two weapons should be treated as a single offense. Even if possession of each gun were a separate offense, the court said, the offenses would be "allied offenses of a similar import," within the meaning of O.R.C. Sec. 2941.25, permitting only one conviction. Id. 546 N.E.2d at 441, syllabus p 2. And in State v. Woods, 8 Ohio App.3d 56, 455 N.E.2d 1289 (Cuyahoga 1982), the court held that simultaneous concealment of multiple guns constituted a single offense for sentencing purposes. Id. 455 N.E.2d at 1291, syllabus p 2. The court observed that any ambiguity as to whether the legislature intended that carrying multiple weapons give rise to multiple offenses must be resolved in the favor of the defendant. Id. 455 N.E.2d at 1294-95, citing Bell v. United States, 349 U.S. 81 (1955), a case in which the United States Supreme Court held that transportation of two women across state lines for immoral purposes should be construed as a single offense under the Mann Act. The Woods court also noted that Sec. 2941.25 provided an alternative ground for reversal of the defendant's conviction, because simultaneous possession of multiple weapons could properly be construed as "allied offenses of a similar import."[2] Id. 455 N.E.2d at 1295. "Division of one continuous, indivisible act into multiple offenses," said the court, "is prohibited by R.C. 2941.25(A)." Id. 455 N.E.2d at 1291, syllabus p 2. See also State v. Moore, 7 Ohio App.3d 187, 454 N.E.2d 980 (Hamilton 1982) (simultaneous concealment of two guns entails a single animus and constitutes allied offenses of a similar import).
 
 
 20
 In drug possession cases the Ohio courts have held that the legislature intended multiple punishments for simultaneous possession of more than one type of drug. See State v. Jennings, 42 Ohio App.3d 179, 537 N.E.2d 685 (Hamilton 1987); State v. Hedelsky, 28 Ohio App.3d 78, 502 N.E.2d 241 (Erie 1985). The Ohio courts do not impose two separate punishments, however, where the defendant possesses the same drug in two different forms or in different locations within his home. See Jennings, 537 N.E.2d at 689.
 
 
 21
 In the case at bar the state trial court imposed concurrent sentences for the nine counts involving possession of blank prescription forms because they were allied offenses with a single animus. The court used the analytical framework of the multiple possession cases described above despite the fact that possession of one of the blank forms could not be said to constitute possession of another blank form.
 
 
 22
 The trial court sentenced consecutively on the forged prescriptions, from what we can gather, on the theory that each of the five acts of forgery entailed a temporally distinct act and separate animus. The problem with this reasoning is that Mr. Woodfork was convicted of simple possession. Had he been charged with the manufacture of the forged prescriptions, the separate acts of forgery would be relevant and the court might properly conclude that each prescription represented a temporally distinct crime. As far as possession is concerned, however, it should not make any difference whether Mr. Woodfork or another party wrote each prescription or whether the forgeries occurred at the same time or weeks apart. It is difficult to see any relevant distinction, in short, between possession of the blank forms and possession of the forged forms.
 
 
 23
 The government argues that possession of each forged prescription is subject to separate punishment because a separate animus was associated with each. "Animus" has been defined by the Ohio courts as "immediate motive" or "intent." See State v. Logan, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345, 1349 (1979). Again, however, Mr. Woodfork was convicted of simple possession--not forgery or intent to use the prescriptions for another criminal act. His motive or intent would seem to have been precisely the same with respect to each prescription.
 
 
 24
 Finally, we note that in case of doubt, the "doubt [ought to] be resolved against turning a single transaction into multiple offenses." Bell v. United States, 349 U.S. 81, 84 (1955). This rule of leniency is no less a part of Ohio's law than it is of federal law. Ohio Rev.Code Sec. 2901.04(A); State v. Merriweather, 64 Ohio St.2d 57, 59, 413 N.E.2d 790, 791 (1980).
 
 III
 
 25
 The fact that a claim of double jeopardy might have succeeded in the Ohio courts does not lead automatically to the conclusion that Mr. Woodfork was deprived of a constitutional right when his lawyer failed to assert such a claim. Mr. Woodfork did have the assistance of a duly licensed lawyer; that is all that the Constitution requires unless the lawyer fails to play the role assigned to him. Regardless of any prejudice suffered by the petitioner in the outcome of the proceeding, habeas relief is not available absent "[a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687 (1984). The defendant in a criminal case is only entitled to "reasonably" effective assistance, and he cannot prevail in a subsequent habeas case without showing that his lawyer's performance "fell below an objective standard of reasonableness." Id. at 687-88.
 
 
 26
 In deciding ineffectiveness claims, courts "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. "[E]very effort [must] be made to eliminate the distorting effects of hindsight," and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." Id. at 689. It is not reasonable to expect perfection in lawyers, and some mistakes of counsel, even if prejudicial, are not unreasonable in a constitutional sense.
 
 
 27
 It is obvious from what we have said that we think Mr. Woodfork's lawyer made a mistake in not raising the double jeopardy issue in the Ohio courts in a timely manner. Given the somewhat confusing state of Ohio law in the double jeopardy area, however, it is not obvious to us at this point whether the mistake reflected a departure from prevailing norms of practice at the time and place in question and, ultimately, a failure to provide Mr. Woodfork "reasonable" legal assistance.
 
 
 28
 A proper evaluation of the reasonableness of the lawyer's performance depends in part upon facts that are not before us, and we think that this evaluation should be made, in the first instance, by the district court. We therefore VACATE the denial of habeas relief and REMAND the case for further proceedings not inconsistent with this opinion. If the district court concludes that counsel's performance was reasonable under the standard enunciated in Strickland, the writ should be denied; if the court concludes that counsel's performance was unreasonable, the writ should be granted.
 
 
 
 [1]
 Ohio law requires criminal defendants to raise ineffective assistance of appellate counsel claims on direct appeal. State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204, syllabus p 2 (1992). Mr. Woodfork did appeal his conviction, but he did not raise this issue. The Ohio Court of Appeals affirmed the conviction. An appeal to the Supreme Court of Ohio followed, but that appeal was dismissed for failure to prosecute. Mr. Woodfork later moved to reopen his appeal to raise ineffective assistance of counsel claims for the first time, but the motion was denied. Thereafter his ineffective assistance of counsel claims were again denied by the Ohio courts in post-conviction proceedings. Mr. Woodfork has clearly exhausted his available state remedies. See Manning v. Alexander, 912 F.2d 878, 881 (6th Cir.1990)
 
 
 [2]
 The conclusion in Thompson and Woods that offenses involving simultaneous possession of weapons are "allied offenses of a similar import" is difficult to reconcile with the Rice test. Although there has been no indication from the Supreme Court that the Rice test is not applicable in possession cases, we note again that the Ohio Supreme Court has not yet had occasion to apply Sec. 2941.25 to a multiple possession case. Each time the Supreme Court has applied the Rice test it was addressing single criminal acts implicating distinct statutory provisions