OPINION *Page 2 
{¶ 1} This matter comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Appellant, John A. Haslam, appeals the decision of the Monroe County Court of Common Pleas which convicted Haslam on seven counts of having weapons while under disability, in violation of R.C. 2923.13(A)(2), and imposed seven consecutive one-year sentences.
 {¶ 2} On appeal, Haslam argues that the trial court imposed multiple convictions for the same conduct and relied on an unconstitutional provision of Ohio law. Haslam also argues that his convictions were not supported by sufficient evidence, and are voided by a 1997 judgment regarding his weapons disability status.
 {¶ 3} The court did not act contrary to law or abuse its discretion in running Haslam's sentences consecutively. However, the State did not present sufficient evidence to prove that three of Haslam's possession counts exceeded the scope of his 1997 partial relief of his weapons disability. Additionally, two of the counts were allied offenses of similar import and should have been merged. Accordingly, the trial court's decision is affirmed in part, reversed in part, and remanded.
 Facts and Procedural History {¶ 4} In 1996, Haslam pleaded guilty to one count of attempted intimidation, a felony offense of violence which triggered a weapons disability. In the July 8, 1996 Judgment Entry on Plea of Guilty, the trial court noted that Haslam had requested that the court permit him to "carry a firearm limited to his particular profession." In its December 16, 1996 Judgment Entry on Sentence, the trial court did not mention Haslam's firearm rights or weapons disability. On February 4, 1997, the trial court filed a separate entry, stating: "It is hereby ordered that the Defendant is hereby allowed to carry a firearm restricted to his employment as a guide for turkey hunters and for his employment training dogs. The Defendant is not allowed to have a firearm in his possession for any recreational purpose."
 {¶ 5} On November 30, 2006, Agent Erryl Wolgemuth met Haslam while Wolgemuth was on a vacation hunting trip. Haslam made statements to Wolgemuth that caused Wolgemuth to suspect that he was engaging in illegal hunts and poaching *Page 3 
activities. Wolgemuth and Agent Mark Randy Smith organized an undercover investigation of Haslam and other hunters in the region, through the Ohio Department of Natural Resources Division of Wildlife and the U.S. Fish and Wildlife Service. The agents spent the afternoon with Haslam on December 10, 2006 in order to set up a deer hunting trip. Haslam led the agents on a deer hunt from December 27 to December 30, 2006. Haslam also led the agents on a turkey hunt during April of 2007.
 {¶ 6} Subsequent to the investigations, Haslam was indicted on eight counts of having weapons while under disability, though the State dropped one count prior to trial. At trial, the State offered the testimony of agents Wolgemuth and Smith, and entered the following documents into evidence: Haslam's 1996 conviction; a picture dated December 8, 2006 of Haslam with a dead deer; a picture of agent Wolgemuth holding a muzzleloading rifle and Haslam's cousin holding a 300 Savage rifle both of which Haslam lent to them; a picture of the deer hunting group, showing Haslam carrying a muzzleloading rifle; and, the 300 Savage rifle confiscated from Haslam's residence. In support of his defense, Haslam testified at trial and offered the 1996 Judgment Entry on Plea of Guilty and the 1997 Judgment Entry partially limiting Haslam's weapons disability.
 {¶ 7} According to the testimony offered by the State, Haslam told the agents that he had used a muzzleloading rifle to shoot a deer on December 1, 2006. When the officers met with Haslam at Haslam's residence on December 10, 2006, Haslam showed the officers his 300 Savage Rifle. The agents again saw the 300 Savage Rifle in Haslam's possession while they were at his house on December 27, 2006. During the guided deer hunt the officers saw Haslam carry two different muzzleloading rifles. On December 29, 2006, Haslam carried a muzzleloading rifle that he had borrowed from his cousin, Charlie Frye. On December 30, 2006, Haslam carried his own muzzleloading rifle. Later on the 30th, at Haslam's residence agent Wolgemuth saw Haslam hand the 300 Savage Rifle to his cousin, Levi Haslam. The agents met with Haslam again in April 2007, to go on a guided turkey hunt. On April 22, 2007 the agents were target shooting with various firearms, using targets that Haslam had set up for them to use prior to their turkey hunt. They discussed marksmanship with Haslam, and Haslam demonstrated his *Page 4 
skills by target shooting with an agent's .22 caliber handgun.
 {¶ 8} During testimony for the defense, Haslam stated that he leads hunting trips in Ohio and West Virginia. Haslam admitted to having the firearms in his possession at some point during all of the dates alleged, though he disputed some of the details. Haslam stated that he thought the judge had given him the right to use firearms for "hunting and food for my table and to make money." Haslam thought the incidents of possession were in the scope of his 1997 weapons disability limitation, with the possible exception of his use of the handgun on April 22, 2007.
 {¶ 9} The jury convicted Haslam on all seven counts, and the trial court subsequently held a sentencing hearing. The trial court stated that the presentence investigation report indicated a pattern of drug and alcohol abuse, failure to respond to past sanctions, an extensive criminal history, and violation of judicial release. The court indicated that it had considered the purposes and principles of sentencing, and the seriousness and recidivism factors in the case. The trial court then imposed a sentence of one year for each count, to be served consecutively.
 ANALYSIS Unconstitutionality {¶ 10} In his first assignment of error, Haslam asserts:
 {¶ 11} "Because the trial court's sentencing entry relied upon former R.C. 2929.14(B) as a basis for imposing seven consecutive one-year sentences against John A. Haslam, the sentence relied upon an unconstitutional provision of Ohio law, and must be vacated and remanded."
 {¶ 12} When reviewing the constitutionality of a felony sentence, an appellate court must determine first whether the defendant has shown by clear and convincing evidence that the sentence is contrary to law, and second whether the court committed an abuse of discretion. State v.Kalish, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶ 4. A trial court's sentence would be contrary to law if, for example, it were outside the statutory range, in contravention of a statute, or decided pursuant to an unconstitutional statute. Kalish at ¶ 36; State v.Thomas, 7th Dist. No. 06 MA 185, 2008-Ohio-1176, at ¶ 16. "An *Page 5 
abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Kalish at ¶ 19, quoting Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 5 OBR 481, 450 N.E.2d 1140 (internal quotations omitted).
 {¶ 13} Haslam's argument points to the first prong of this analysis, as he argues that the sentencing court specifically relied upon R.C. 2929.14(B), a statutory subsection found to be unconstitutional byState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. This court has previously held that it is a violation of Foster to explicitly rely on R.C. 2929.14(B) when rendering a sentence. Thomas at ¶ 18, citing State v. Moore, 7th Dist. No. 06 MA 60, 2007-Ohio-1574, at ¶ 12. However, it is not error to merely refer to the sentencing factors that are found within R.C. 2929.14(B) or use language which might be found in R.C. 2929.14(B). Instead, there is only error in "the court's reliance on a requirement of judicial factfinding, when Foster eliminated any such requirement." (emphasis added) Thomas at ¶ 22. Thus the trial court must have explicitly stated that it was sentencing Haslam due to the mandates of or pursuant to R.C. 2929.14(B) in order for his sentence to be unconstitutional as claimed.
 {¶ 14} To support his argument, Haslam points out that the trial court's decision cited R.C. 2929.14, and its findings included language such as "demean the seriousness" and "adequately protect the public from future crimes," which can be found in R.C. 2929.14(B)(2). While those facts are true, they do not indicate that the trial court specifically cited division (B) of R.C. 2929.14, nor do they indicate that the trial court thought it was bound to follow the requirements of the now unconstitutional R.C. 2929.14(B). As stated above in Thomas, the trial court did not commit error by merely using some of the language that could be found in division (B)(2). Furthermore, the language Haslam quotes is also found in R.C. 2929.11, a statute which the trial court was obligated to consider. Kalish at ¶ 36. Finally, as the trial court did not depart from the minimum of one year for each third degree felony conviction, R.C. 2929.14(B) did not apply. Haslam's argument would be better suited against unconstitutional requirements regarding consecutive sentences in R.C. 2929.14(E)(4), but the result under the above *Page 6 
analysis would be the same.
 {¶ 15} Additionally, the trial court did not impose Haslam's sentence in an arbitrary, unreasonable, or unconscionable fashion. The trial court thoughtfully and thoroughly considered all of the relevant and constitutional statutes to Haslam's case, as evidenced by its discussion thereof during Haslam's sentencing hearing. The trial court indicated that it reviewed Haslam's presentence investigation report and took into consideration the evidence of Haslam's extensive criminal history, failure to respond to past sanctions, violations of probation and of judicial release, multiple pending indictments, and extensive history of drug and alcohol abuse. The trial court explicitly stated that it had considered the purposes and principles of sentencing as well as the seriousness and recidivism factors in the case, in order to conclude that consecutive sentences were appropriate. The trial court thus did not abuse its discretion in rendering Haslam's sentence.
 {¶ 16} In summary, the trial court's use of language which could be attributed to language within R.C.2929.14(B) did not render the trial court's decision contrary to law, and the trial court did not abuse its discretion in running Haslam's sentences consecutively. Accordingly, Haslam's first assignment of error is meritless.
 Relief of disability status {¶ 17} In his second assignment of error, Haslam asserts:
 {¶ 18} "Because a valid trial court Entry from 1997 had granted John A. Haslam relief from disability during his non-recreational service as a hunting guide, the convictions against him are legally void, and must be vacated."
 {¶ 19} Haslam raises this argument separately from his sufficiency of the evidence argument in the third assignment of error, but as discussed below, the issue of weapons disability status in this case belongs in an analysis of the sufficiency of the evidence. Haslam claims that the jury's decision is voided by the 1997 relief from weapons disability. Said another way, because Haslam established the affirmative defense of relief from his gun disability, the jury's decision was based on legally insufficient evidence.
 {¶ 20} Pursuant to R.C. 2923.14, "[a]ny person who, solely by reason of the person's disability under division (A)(2) or (3) of section 2923.13 of the Revised Code, is *Page 7 
prohibited from acquiring, having, carrying, or using firearms, may apply to the court of common pleas in the county in which the person resides for relief from such prohibition." R.C. 2923.14(A).
 {¶ 21} As an initial issue, the State argues for the first time on appeal that Haslam's 1997 partial relief from his weapons disability was not a proper order under R.C. 2923.14, and thus did not exempt him in any way from R.C. 2923.13. The 1997 judgment itself was never appealed by the State, nor was the validity of the judgment challenged by the State in the proceedings below. The State has thus waived this argument and the affirmative defense of relief from a weapons disability is available to Haslam.
 {¶ 22} An affirmative defense is usually an excuse or justification for the criminal act "peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence," and can also be any defense that is "expressly designated as affirmative." R.C. 2901.05(D). The accused has the "burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense." R.C. 2901.05(A). Normally an affirmative defense can only be addressed in a manifest weight argument, not a sufficiency analysis, "because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, 840 N.E.2d 1032, at ¶ 37 (internal citations omitted).
 {¶ 23} It is a fourth degree felony under R.C. 2923.13 to possess a firearm if the person has been convicted of a felony offense of violence "unless relieved from disability as provided for in Section 2923.14." A number of Ohio appellate districts have held that proof of relief from a weapons disability is not an element of the crime of possession of a weapon while under disability, but an affirmative defense that the accused may raise. See, e.g., State v. Gibson (1993),89 Ohio App.3d 188, 192, 623 N.E.2d 1266; State v. Lanier, 2nd Dist. No. 2007 CA 77,2008-Ohio-4018; State v. Daniel, 10th Dist. No. 05AP-564, 05-AP-683,2006-Ohio-4627; State v. Hart (Oct. 18, 1988), 5th Dist. No. 3353;State v. Jenkins (Apr. 24, 1980), 8th Dist. No. 40670; State v.Jordan (Aug. 9, 1976), 11th Dist. *Page 8 
No. 673.
 {¶ 24} In Gibson, the Third District explained "In a prosecution for having weapons while under disability, the defendant is in the best position to show that his disability had been removed. Requiring the state to prove that the defendant never applied for and was never granted relief from disability is an onerous burden which was not intended by the legislature in its enactment of R.C. 2923.13."Gibson at 192.
 {¶ 25} In all of the above-listed cases, the defendants did not argue or provide any proof that a judge had relieved their weapons disability. Instead, they merely argued that the prosecution had the obligation to prove beyond a reasonable doubt that the defendants did not obtain judicial relief in order for their convictions to be based on sufficient evidence on all elements of the statute.
 {¶ 26} It is true that the defense of relief from weapons disability is an affirmative defense in that a defendant waives the issue by not arguing it. However, once raised, proof of relief from weapons disability does not have the quality of an affirmative defense because it is a denial of an element of the crime, not an admission of the elements with an added justification or excuse. Thus Haslam had an initial burden of production, but once satisfied, the burden rested upon the State to prove beyond a reasonable doubt that Haslam was not relieved from his weapons disability. Haslam satisfied his initial burden of production by submitting the 1997 judgment entry providing him with partial relief from his weapons disability. Because the burden of proof returned to the State, the remaining sufficiency analysis will be discussed in Haslam's third assignment of error.
 Sufficiency of the evidence {¶ 27} In his third assignment of error, Haslam asserts:
 {¶ 28} "John A. Haslam was denied his state and federal constitutional rights to due process and a fair trial when the trial court entered a judgment of conviction against him in the absence of sufficient evidence to support the conviction."
 {¶ 29} Haslam contends that there was insufficient evidence to support his conviction because the seven stacked sentences against him, the confusing factual record, and the court's refusal to grant the jury's requests for clarification all resulted in *Page 9 
confusing the jury. Haslam claims that "[t]he jury had lost its way" due to this confusion. Much of Haslam's argument supports a manifest weight claim, but not the sufficiency claim that Haslam has raised in this assignment of error.
 {¶ 30} A claim of insufficient evidence raises the question of whether the evidence is legally adequate to support the jury verdict as a matter of law. State v. Thompkins (1997), 78 Ohio St.3d 380, 386,678 N.E.2d 541. This is a question of law that we review de novo. In analyzing the sufficiency of evidence to sustain a criminal conviction, an appellate court must construe the evidence in a light most favorable to the prosecution. State v. Hill (1996), 75 Ohio St.3d 195, 205,661 N.E.2d 1068. After construing the evidence in this manner, the test for determining sufficiency is whether any rational trier of fact considering the evidence could have found all essential elements of the charged offenses proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 31} Although the State does not raise this issue on appeal, we note that Haslam did not move for acquittal at any point during the trial. Haslam's failure to move for a Crim. R. 29(A) judgment of acquittal waives all but plain error regarding sufficiency of the evidence.State v. Robinson, 177 Ohio App.3d 560, 2008-Ohio-4160, 895 N.E.2d 262, at ¶ 18. However this court has repeatedly held that a conviction based on insufficient evidence is a denial of due process and "would usually amount to plain error." State v. DiCarlo, 7th Dist. No. 02 CA 228, 2004-Ohio-5118, at ¶ 19.
 {¶ 32} The applicable language of R.C. 2923.13, having weapons while under disability, is as follows:
 {¶ 33} "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 34} * * *
 {¶ 35} (2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence. *Page 10 
 {¶ 36} * * *
 {¶ 37} (B) Whoever violates this section is guilty of having weapons while under disability, a felony of the third degree."
 {¶ 38} The culpable mental state of knowingly is defined by R.C. 2901.22:
 {¶ 39} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 40} Additionally, the mens rea element of this crime, "knowingly," only applies to Haslam's possession of a firearm, and does not apply to his understanding of his weapons disability status. State v. Smith
(1987), 39 Ohio App.3d 24, 528 N.E.2d 1292, syllabus.
 {¶ 41} To "have" a firearm within the meaning of R.C. 2923.13, a defendant must actually or constructively possess the weapon. State v.Simpson, 7th Dist No. 01 CO 13, 2002-Ohio-1565, at ¶ 52. Actual possession merely requires physical control or ownership of the weapon at some point. Id; State v. Messer (1995), 107 Ohio App.3d 51, 56,667 N.E.2d 1022; State v. Hardy (1978), 60 Ohio App.2 325, 14 O.O.3d 289,397 N.E.2d 773, paragraph one of the syllabus.
 {¶ 42} Thus the State must prove the following elements: 1) Haslam was convicted of a felony offense of violence, 2) Haslam knowingly possessed a firearm, and 3) Haslam's possession of the firearm was outside of the scope of the partial relief from his weapons disability.
 {¶ 43} As to the first element of the offense, Haslam's 1996 conviction for intimidation is statutorily defined as a felony offense of violence, and Haslam does not challenge that portion of the evidence. As to the second element of the offense, the facts in the light most favorable to the prosecution are the following:
 {¶ 44} Count One: On December 1, 2006, Haslam used his muzzleloading rifle to shoot a deer. The State offered a picture of Haslam with the dead deer, dated "12/8/06," into evidence. Both of the State's witnesses testified that Haslam had told them that he *Page 11 
had hunted and shot the deer on December 1, 2006. Haslam admitted during his testimony that these facts were true.
 {¶ 45} Count Two: On December 10, 2006, Haslam possessed his 300 Savage rifle at his residence. Both of the State's witnesses testified that Haslam showed the 300 Savage rifle to them while they were at his house. Haslam testified that he was "showing off" the 300 Savage rifle to the agents on that date.
 {¶ 46} Count Three: On December 27, 2006, Haslam again possessed his 300 Savage rifle at his residence. Both of the State's witnesses testified that they saw the 300 Savage rifle in Haslam's possession while they were at his house on December 27, 2006.
 {¶ 47} Count Four: On December 29, 2006, Haslam carried a muzzleloading rifle that he had borrowed from his cousin, Charlie Frye. Both of the State's witnesses testified that they saw Haslam carrying a rifle during that day's hunt. The State submitted a picture of Haslam carrying the rifle into evidence. Haslam admitted that he handled the muzzleloading rifle, but stated that he did so only in order to give it to one of the agents.
 {¶ 48} Count Five: On December 30, 2006, Haslam carried his muzzleloading rifle. Both of the State's witnesses testified that Haslam had lead them on a hunt that day, and one of the State's witnesses testified that he witnessed Haslam carrying a rifle during that hunt. Haslam admitted that he handled his muzzleloading rifle, but only in order to give it to one of the agents.
 {¶ 49} Count Six: On December 30, 2006, Haslam again possessed his 300 Savage rifle at his residence. One officer testified that he saw Haslam handle the rifle on that date in order to hand it to his cousin, Levi Haslam. The second officer did not see the 300 Savage rifle in Haslam's hands on that date, but did see the rifle at Haslam's residence, in the hands of Haslam's cousin, Levi Haslam.
 {¶ 50} Count Seven: On April 22, 2007, Haslam used a .22 caliber handgun. Both Haslam and the State's witnesses testified that Haslam fired the handgun at a target while the officers were conducting target practice prior to their turkey hunt.
 {¶ 51} Given the foregoing, the State provided evidence that Haslam owned and/or had physical control over a firearm on each of the charged dates. The circumstances of *Page 12 
Haslam carrying, firing, or holding a firearm in order to give it to another person all sufficiently indicate that Haslam knowingly had physical control over each firearm. Thus, the State put forth sufficient evidence to prove that Haslam knowingly acquired, had, carried, or used a firearm for each of the seven counts.
 {¶ 52} As to the third element of the offense, the trial court allowed Haslam's 1997 judgment entry into evidence as proof of partial relief from disability. The entry states as follows: "It is hereby ordered that the Defendant is hereby allowed to carry a firearm restricted to his employment as a guide for turkey hunters and for his employment training dogs. The Defendant is not allowed to have a firearm in his possession for any recreational purpose."
 {¶ 53} Haslam argues that a liberal construction of the 1997 entry supports the conclusion that Haslam was permitted to use a firearm for any purpose other than a recreational purpose. This argument would be logically viable if the first sentence of the entry indicated that Haslam's permission to use firearms included, but was not limited to, use for his profession with turkeys or dogs. However the court says his firearm use is "restricted to" that which the entry specified. It is true that the specificity of the first sentence renders the second sentence to be somewhat superfluous. Such wording might be problematic in a statute, but does not raise the same problems in a judgment entry. Thus the 1997 judgment entry indicates that employment as a guide for turkey hunters and employment training hunting dogs are the only activities for which Haslam may have a firearm.
 {¶ 54} In Count One, Haslam used a firearm during his own private activities, in order to shoot a deer. In Counts Four and Five, Haslam carried a firearm as part of his employment as a guide for deer hunters. The State's witnesses and Haslam himself stated that the purpose of their activities on December 29 and 30 was to engage in deer hunting. Thus the State proved that Haslam's use of the firearms in Counts One, Four and Five, exceeded the scope of the partial relief from his gun disability.
 {¶ 55} In Count Seven, Haslam used a handgun for target practice while under the employ of turkey hunters. Both parties discussed the use of target practice as an *Page 13 
important part of preparation for hunting. However, Agent Smith testified that turkey hunting in Ohio can only be performed using a shotgun. See also Ohio Adm. Code 1501:31-15-10. Haslam was thus target shooting with a firearm not permitted for use during the hunting activity. Haslam was merely demonstrating his marksmanship skills to the agents, and was not firing the handgun as part of his job as a guide for the turkey hunters. Although the timing of Haslam's use of the handgun might apply to the 1997 judgment entry related to turkey hunting, the use of the handgun was recreational. Thus the State proved that Haslam's use of the firearm in Count Seven was outside of the scope of the partial relief from his weapons disability.
 {¶ 56} In Counts Two, Three and Six, Haslam possessed a Savage 300 rifle in his home, not during a period of employment as a turkey hunt guide or hunting dog trainer. The State did not, however, demonstrate that Haslam used the firearm outside the scope of his partial limitation, beyond mere ownership of the firearm. If Haslam is permitted to own a firearm for turkey hunting or dog training activities, it does not follow that he should be required to sell or otherwise dispossess himself of the firearm the moment he has ceased to perform one of those jobs. Instead, it follows that Haslam is permitted to keep the firearm at his residence even if not in the midst of performing one of the two permitted activities. The State demonstrated that Haslam would not be able to legally use the Savage 300 rifle during turkey season in Ohio, but both Haslam and the State's witnesses testified that he could legally use the Savage 300 rifle in West Virginia for that purpose. Haslam testified that he led hunts in West Virginia in addition to his work guiding hunts in Ohio. Additionally, the State did not demonstrate that such a firearm was illegal or otherwise impossible to use during the course of training hunting dogs.
 {¶ 57} The State did not prove that Haslam exceeded the scope of the partial limitation on his weapons disability by demonstrating that Haslam possessed a Savage 300 rifle at his residence on December 10, 27 and 30, 2006. The State therefore did not provide legally sufficient evidence to support a conviction for Counts Two, Three and Six. Haslam's third assignment of error is partially meritorious. The convictions and sentences for Counts Two, Three and Six are vacated. *Page 14 
 Merger and double jeopardy {¶ 58} In his fourth assignment of error, Haslam asserts:
 {¶ 59} "Where the trial court does not merge for purposes of sentencing and duplicative criminal counts, the consecutive sentences that result are void. Furthermore, the sentence must be vacated because it violates double jeopardy protections and due process of law."
 {¶ 60} Haslam asserts that the seven counts of having weapons while under disability should have been merged into one count because his possession of firearms was part of a continuous course of conduct with identical animus.
 {¶ 61} The State noted in its brief that Haslam failed to raise the issue of merger at trial, and that Haslam only referred to this general concept when arguing for concurrent sentences during his sentencing hearing. The failure to object to a trial court's failure to merge charges for sentencing generally waives all but plain error. State v.Elmore, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, at ¶ 127;State v. Hooper, 7th Dist. No. 03 CO 30, 2005-Ohio-7084, at ¶ 18. Pursuant to Crim. R. 52(B), plain error is an error which was an obvious defect in the trial proceedings, and which affected the defendant's substantial rights. State v. Barnes 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240. In order to find plain error under Crim. R. 52(B), it must be determined that, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St.2d 91, paragraph two of the syllabus. State v. Davis, 116 Ohio St.3d 404,2008-Ohio-2, 880 N.E.2d 31, at ¶ 378.
 {¶ 62} The Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution prohibit a defendant from being "tried twice for the same offense." This prohibition applies both to successive prosecutions and cumulative punishments. U.S. v. Dixon (1993), 508, U.S. 688, 704,113 S.Ct. 2849, 125 L.Ed.2d 556. Because an error related to merger affects a defendant's right to protection from double jeopardy, and because an erroneous failure to merge convictions inevitably causes a different outcome in a defendant's trial, the failure to merge convictions on allied offenses of similar import will almost always result in plain *Page 15 
error. State v. Crowley, 151 Ohio App.3d 249, 2002-Ohio-7366,783 N.E.2d 970, at ¶ 34; State v. Appenzeller, 11th Dist. No. 2006-L-258,2008-Ohio-7005, at ¶ 108. Thus, although Haslam failed to raise the issue of merger during trial, any error by the trial court in failing to merge the charges in Counts One and Five amounts to plain error.
 {¶ 63} Statutory guidance regarding merger for allied offenses of similar import is found in R.C. 2941.25, which reads:
 {¶ 64} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 65} (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 66} The purpose of R.C. 2941.25 is to "prohibit duplication of punishment where both crimes are motivated by a single purpose and where conviction of both would be dependent upon identical conduct and the same evidence." State v. Brown (1982), 7 Ohio App.3d 113, 116,7 OBR 145, 454 N.E.2d 596. Fittingly enough, the Ohio Legislature has explained that this statute "prohibits `shotgun' indictments and convictions for related offenses all growing out of the same transaction and motivated by the same animus." Woodfork v. Russell, 19 F.3d 20 (C.A. 6 Ohio) (1994) (unpublished opinion), quoting Final Report of the Ohio Legislative Service Commission's Technical Committee to Study Ohio Criminal Laws and Procedures on the Proposed Ohio Criminal Code, Comments to Proposed Section 2941.25 (1971).
 {¶ 67} In an analysis of the applicability of R.C. 2941.25, a reviewing court should first determine if the elements of the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." State v. Cabrales,118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at ¶ 22 (internal citations omitted). The charges are of similar import if the elements of each one are identical. State v. *Page 16 Bybee (1999), 134 Ohio App.3d 395, 401, 731 N.E.2d 232. Secondly, a reviewing court should determine if the offenses were committed separately or in a way that involved a separate animus for each offense.Cabrales at ¶ 14.
 {¶ 68} All seven charges in this case involve a violation of R.C. 2923.13, thus each offense is identical in the abstract. The second prong of the analysis turns on Haslam's conduct during each of the charged offenses. This case involves six dates, four firearms, and a variety of actions including possessing, lending, carrying, and firing the firearms.
 {¶ 69} The Ohio Legislature has not given a great deal of guidance on how to interpret the application of R.C. 2941.25, and the merger issue becomes even more difficult when looking at a case of multiple instances of possession rather than a case of multiple acts affecting other entities, or a single act implicating more than one statutory provision. In a Federal case applying Ohio law, the Sixth Circuit noted the difficulty in the analysis of merger when it involves possession rather than discreet acts or discreet statutory provisions. Woodfork v.Russell (C.A.6, 1994), 19 F.3d 20. The Sixth Circuit's observation that the "Ohio Supreme Court has not yet had occasion to apply § 2941.25 to a multiple possession case," continues to be true. Woodfork at FN2.
 {¶ 70} Another Federal Appellate Court dealt with the same quandry:
 {¶ 71} "[The Statute] makes it unlawful for any member of a disqualified class `to . . . possess… any firearm or ammunition.' This language presents the recurring question of '[w]hat Congress has made the allowable unit of prosecution.' The prohibited conduct — possession of any firearm or ammunition — could arguably occur every time a disqualified person picks up a firearm even though it is the same firearm or every time that person picks up a different firearm."United States v. Dunford (C.A.4 1998), 148 F.3d 385 (internal citations omitted).
 {¶ 72} The court in Dunford concluded that "the simultaneous possession of multiple firearms generally constitutes only * * * one offense unless there is evidence that the weapons were stored in different places or acquired at different times. Dunford at 390. Various Ohio Districts have given similar holdings. See, e.g., State v.Thompson (1988), 46 Ohio App.3d 157, 159, 546 N.E.2d 441; State v.Woods (1982), *Page 17 8 Ohio App.3d 56, 60, 455 N.E.2d 1289; State v. Israel (July 22, 1992), 9th Dist. No. 15487; State v. Pitts, 4th Dist. No. 99 CA 2675, 2000-Ohio-1986. The Fourth District stated that "simultaneous, undifferentiated possession of weapons by a person under a disability constitutes only one offense."Pitts, at *13, citing Thompson at 159. The Fourth District inPitts went on to find that storing different weapons in different locations constitutes differentiated possession of those weapons, and thus counted them as separate offenses. Pitts at *13.
 {¶ 73} We have disposed of the convictions based on Haslam's possession of the Savage 300 rifle. Remaining are the convictions based on Haslam's possession of his own muzzleloader on December 1 and 30, 2006, the single instance of possession of his cousin's muzzleloader on December 29, 2006, and the single instance of possession of the agent's handgun on April 22, 2007.
 {¶ 74} Because the remaining possession offenses involved three different weapons in different locations, it is consistent with the case law precedent of other Ohio districts to allow convictions on three different counts based on differentiated possession. However, it is a closer issue as to whether Haslam's repeated possession of his muzzleloader in Counts One and Five should be allowed as separate convictions.
 {¶ 75} In an analogous case regarding the merger of multiple drug possession charges, the Twelfth District found that although the prosecution successfully proved that the defendant possessed marijuana on two different dates, there was no evidence that it was different marijuana or that the defendant's animus changed in regards to that possession. State v. Davidson (Nov. 25, 1991), 12th Dist. No. CA91-05-033, at *3. In another multiple drug possession charge merger case, the First District explained that the possession of the same marijuana on two different dates was part of the same continuing pattern of conduct by the defendant. State v. McIntosh (2001),145 Ohio App.3d 567, 576, 763 N.E.2d 704.
 {¶ 76} In the context of criminal possession of a firearm in violation of a similar federal statute, the Sixth Circuit has held that "[p]ossession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." United *Page 18 States v. Jones, 533 F.2d 1387, 1391 (6th Cir. 1976). A continuing course of conduct which is defined by statute as a single crime cannot be charged as multiple crimes occurring at discrete moments in time. Id.
 {¶ 77} The facts of Davidson and McIntosh are more analogous to this case than the Ohio cases involving simultaneous possession of multiple firearms: like the quantity of marijuana witnessed in Davidson, Haslam's firearm is the same one on each of the two offense dates, and the prosecution did not provide any proof that Haslam had dispossessed himself of the firearm and then acquired it anew, or that he had otherwise changed his animus in terms of violation of the applicable statute. Therefore Haslam's possession of the same firearm should be considered as one continuous act. Multiple convictions based on witnessing Haslam with the firearm on different dates renders illogical results, the kind that were indicated in Dunford: if such multiplicity were allowed, Haslam could be convicted for every separate time he picked up the firearm, or every time he walked into the room where the firearm was stored.
 {¶ 78} Under Ohio law, our interpretation of criminal statutes must involve strict construction against the State and liberal construction in favor of the accused. R.C. 2901.04(A). Given the vagueness of R.C. 2941.25 as it applies to the facts of this case, we shall follow the "presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of harsher punishment" and resolve the issue by refraining from "turning a single transaction into multiple offenses." Bell v. U.S. (1955), 349 U.S. 81, 83-84, 75 S.Ct. 620.
 {¶ 79} Given the foregoing, the trial court erred in failing to merge the convictions for Counts One and Five. Haslam should have been convicted of only one of the two charges, thus the outcome of the proceeding would have been different, and we find that plain error occurred. Accordingly, Haslam's fourth assignment of error is partially meritorious. Pursuant to State v. Brown, 119 Ohio St.3d 447,2008-Ohio-4569, 895 N.E.2d 149, this cause is remanded to the trial court to merge these two offenses. *Page 19 
 Conclusion {¶ 80} The trial court did not act contrary to law or abuse its discretion in its decision to run Haslam's sentences consecutively. However, the trial court erred in allowing seven separate convictions for Haslam's possession offenses. Haslam's possession of the Savage 300 rifle did not exceed the scope of the 1997 partial relief from weapons disability, and thus Haslam's convictions on Counts Two, Three and Six are vacated. Haslam's possession of the same muzzleloader on two dates was a continuous act, and the observation of that act on different days should not have constituted separate offenses, therefore Counts One and Five should be merged.
 {¶ 81} Accordingly, the judgment of the trial court on Counts Two, Three, and Six is vacated, the judgment of the trial court on Counts One, Four, Five and Seven is affirmed and this cause is remanded to the trial court to merge Counts One and Five.
Vukovich, P.J., concurs
Donofrio, J., concurs. *Page 1